1814.

GENET
v.
TALLMADGE.

March 18.

*The Children of* E. C. GENET, *by him, as their guardian, against* TALLMADGE, *administrator, &c.*

A father, who has been appointed *guardian* to his infant children, by the court, and has given competent security under the act, (sess. 36. c. 75.,) and approved security to account to his children, on their coming of age, is entitled to receive legacies and distributive shares belonging to them. But as father, or guardian, *by nature* merely, he would not be allowed to receive legacies, &c. belonging to his children.

PETITION for the payment, to the father, as guardian to his children, of the sum of 17,166 dollars and 76 cents, already paid into court, by the defendant, as administrator of *George Clinton*, deceased, for and on account of the distributive share of that estate due the petitioners, who are minors. The father (*E. C. Genet*) was appointed guardian to his children by this court, in *September*, 1812, and gave the security required.

*Van Vechten*, (attorney-general,) for the petition.

*T. A. Emmet, contra*, on behalf of the administrator.

THE CHANCELLOR. There is one objection to the demand of the petitioner, which must prevail. The statute of sess. 36. c. 75., (1 *N. R. L.* p. 314.,) declares that every person entitled to any legacy or distributive share, shall, at the time of payment or delivery, give bond in double the sum demanded, with two sufficient sureties, to the executor or administrator, to refund, &c. if assets should fail for the payment of debts, &c. No such bond is tendered, and the application, on that ground, must fail.

But if this objection be removed, (as it probably may,) the petitioner, in his character of *guardian*, is entitled to

1814.

GENET
v.
TALLMADGE.

the money, though in his character of *father*, or guardian by nature merely, it seems that he would not be. There has, however, been considerable doubt and discussion in the books, even on this point: how far a legacy due to minors could be safely paid by the executor to the father of the legatees: but the better opinion is, that the payment would be at the risk of the executor. The oldest case I have met with, on this subject, is that of *Holloway* v. *Collins*, (1 *Ch. Cas.* 245.,) in which the Lord Keeper held, that a payment, by the executor, of a legacy to the father of an infant legatee, was a good payment, though the father afterwards became insolvent. But as it appeared that the executor had taken a bond of indemnity, he was held, in that case, to have paid at his own peril. Afterwards, in the case of *Strickland* v. *Hudson*, (3 *Ch. Rep.* 88.,) it was said, that the Master of the Rolls would never allow a child's legacy to be paid to the parent, upon any security whatever; and yet, in that case, on a bill against the executor, by the father, as next friend and guardian, his children's legacy was decreed to be paid to him, on his giving security to pay over the same when his children came of age. The case of *Dagley* v. *Tolferry* (1 *P. Wms.* 285. 1 *Eq. Cas. Abr.* 300. pl. 2. *Gilbert's Eq. Cas.* 103.) has been referred to, in the late cases, as a leading one on this point. It was there decided, by Lord Chancellor *Cowper*, that the payment, by the executor, of a legacy to the father of a minor was ill, and the executor was decreed to repay the legacy, under circumstances of extreme hardship, and after the father had become bankrupt. The Lord Chancellor seemed to consider it as a rule of the court, that the parent was not to receive the children's legacies, though he was, by nature, guardian to his children. But this case was questioned by Lord *Hardwicke*, in *Philips* v. *Pagel*, (2 *Atk.* 80.,) and he said that the rule was there laid down too strictly; that in all cases where executors pay infants' legacies to fathers, they shall be paid over again. In *Cooper* v. *Thornton,*

(3 *Bro.* 96. 186.,) the Master of the Rolls observed, in allusion to the above cases, that, in early times, the payment to the father of a legacy to the child was held good, but that since *Dagley* v. *Tolferry*, the idea of the court had been otherwise. He said that the rule was laid down very harshly in that case, though he did not mean to interfere with the doctrine; and he decided the case before him upon its special circumstances; but the counsel referred to a decision in the exchequer, in 1786, in the case of *Cunningham* v. *Harris*, in which the rule was declared to be firmly settled, that a legacy to an infant cannot safely be paid to the father.

1814.

GEN ET
v.
TALLMADGE.

In all these cases, the question seems to have been, whether a legacy to a minor could safely be paid to the father, as *father*, or natural guardian merely, and it does not appear to be any where denied, that a *guardian*, duly appointed by the competent authority, was authorized to receive legacies and distributive shares belonging to his ward. On this point, I do not see that any doubt can arise. The statute of this state, to which I have already referred, contemplates a recovery at law, by the guardian, of legacies and distributive shares, on giving approved security to account to the infant on his coming of age. A guardian is, by the general nature of his trust, entitled to the possession and care of the personal, and of the rents and profits of the real estate of the infant; and I do not feel myself at liberty to deny to the guardian, on any terms whatever, the possession of this distributive share.

But it appears that the security given by the petitioner, when appointed guardian, is not quite adequate; and, though his claim may be imposing, when we consider that he unites the characters of natural and of legal guardian, yet I think the security must be increased to, at least, 10,000 dollars more, before the petition can be granted.

Let it therefore be referred to a master, to ascertain and report proper and competent security to the administrator,

under the statute, and additional security to the infants, to the amount of, at least, 10,000 dollars, and all further direction is, in the mean time, reserved.