### RICHARD L. SELDEN'S APPEAL FROM PROBATE.

*G* purchased a farm with money belonging principally to his wife *C*, and caused a conveyance to be made to her by a deed expressed as follows : " To all people, &c., Know ye that I, *L D*, for the consideration of $3,000 received to my full satisfaction of *C, in trustee for S*, do give, grant, bargain, sell and confirm unto the said *C*, one certain piece of land ; " the remainder being in the usual form of a warrantee deed, with no other expression indicating that the property was held in trust. Whether this deed on its face created a trust in favor of *S: Quere.*

It appeared that *S* was the minor daughter of *G* and *C*, of the age of five years, that the conveyance was made in this manner for a temporary purpose and with no intention of vesting a beneficial interest in *S*, that after the conveyance the property was regarded and treated by *G* and *C* as the property of *C*, that they subsequently contracted to sell it to one *H*, but that he would not consent to receive a deed from them without a quitclaim of the nominal interest of *S*, that thereupon one *L*, at the request of *G* and *C*, took out letters of guardianship and procured from the court of probate an order to sell the interest of *S* in the property and executed to *H* a guardian's deed thereof for the consideration of one dollar. *G* and *C* at the same time executed to *H* a warrantee deed of the premises, who on receiving the deed paid the purchase money to *G*. *L*, supposing that *S* had only a nominal interest in the property, allowed *G* to receive the money, and immediately after resigned his guardianship, which resignation was accepted by the court of probate and no other guardian was appointed in his place. *G* then was and ever since had been insolvent, and the money so paid was wholly lost to *S*. *L* died soon after, and *G* in behalf of his minor daughter presented a claim against his estate for the money paid for the land. On an appeal to the superior court from an allowance of the claim by the commissioners, it was held :—1. That by the statutes of this state, in default of any special appointment by a court having jurisdiction, the father is the natural guardian of his minor child, and as such is entitled, not only to the control of the person, but also to the possession of the property of such child. 2. That upon the resignation of *L*, the

guardian, the money so previously received by *C*, the father and natural guardian, became and was properly in his hands.   3.  That the money being already properly in his hands, he was not entitled to recover the same again from the estate of *L*.

APPEAL by the appellant, as administrator of the estate of Lyman H. Dickinson, from an allowance of a claim against his estate by commissioners; tried in the superior court, before *Mc Curdy, J.*

The claim was presented against the estate in behalf of Susan Green, the minor daughter of Joel T. Green.   It was found by the court that on the 28th of January, 1858, Joel T. Green purchased a farm in Haddam with money belonging principally to his wife, Catherine B. Green; that for a temporary purpose, either as a cover from his creditors, or to pacify his wife's friends for the time being, he caused the conveyance of the farm to be made to his wife, in trust for his daughter Susan, (if such be the proper construction of the deed,) with no intention however, either on his part or on that of his wife, of giving his daughter any beneficial interest in or control over the property.   The daughter at this time was but five years of age.   About two years afterwards Green agreed to sell the farm to one Hezekiah Scoville, who knew all the foregoing facts, for the sum of $2,200, and with his wife as trustee executed a deed to him, but Scoville objected to paying the purchase money until an additional deed should be executed by a guardian of said Susan.   Thereupon Green requested Dickinson, the intestate, (by whom the land had been originally conveyed to Mrs. Green,) to act as guardian of the said Susan for the purpose simply of executing a formal instrument to satisfy Scoville.   Dickinson consented to do so, and was appointed her guardian by the court of probate, and an order was made by the court authorizing him as guardian to sell and convey her interest in the farm, and he did, as guardian, on the 9th of January, 1861, execute a deed in usual form, for the expressed consideration of one dollar, and delivered it to Green for Scoville, and immediately thereafter on the same day he resigned his guardianship, which resignation the court accepted.   No successor was appointed by the court.   The deeds were de-

livered by Green to Scoville on the same day, and the latter thereupon gave to Green his notes for the purchase money, which were within a few weeks thereafter paid by him to Green, acting as the agent of his wife and pursuant to the understanding of all the parties ; and Dickinson never received the purchase money or any part of it. Previous to the sale to Scoville Green took the rents and profits of the farm, and had entire control over the same with the assent of his wife.

The original conveyance of the farm to Mrs. Green was expressed as follows :—" To all people, &c. Know ye, that I, Lyman H. Dickinson, of &c., for the consideration of $3,000 received to my full satisfaction of Catharine B. Green, wife of Joel T. Green, in trustee for Susan Green, of Rocky Hill, do give, grant, bargain, sell and confirm unto the said Catharine B. Green, one certain piece of land, with the buildings thereon, situated in the town of Haddam, and containing forty acres more or less ; [describing it.] To have and to hold the above granted and bargained premises, with the appurtenances thereof, unto her the said grantee, and to her heirs and assigns forever, to her and their own proper use and behoof." The deed then proceeded in the usual form, with no further allusion to the interest of Susan Green under it.

Upon the argument of the case the appellees insisted that, if the court should find the facts as above stated, they constituted in law no defense to the claim ; but the court did not so hold, but decided upon the above facts that the estate of Dickinson was not indebted, and rendered judgment for the appellant.

The appellees thereupon moved for a new trial.

*T. C. Perkins* and *R. Welles*, in support of the motion.

*C. Chapman* and *D. Chadwick*, contra.

DUTTON, J. The record in this case, in consequence of that looseness and inaccuracy of pleading which unfortunately prevails to so great an extent in modern practice, presented an immaterial issue. The appellant, without alleging

that the appellee was a minor, made the parents of the appellee parties to the appeal, for what reason it is not easy to conceive, as their individual rights could not possibly be affected by a decree in the case. He then alleges as the reason for the appeal, " that the estate is not indebted to the said Susan Green, Joel T. Green and Catherine B. Green." No issue was in fact joined, but it must be presumed to have been on this allegation. The finding of this issue for the appellant would obviously furnish no ground for the reversal of the decree of the court of probate, as it would not have been inconsistent with the existence of a debt to Susan Green alone.

But as no objection appears to have been taken on the trial on this ground, the evidence offered will be considered the same as if the issue was whether the estate was indebted to Susan Green.

. In support of such a claim evidence was offered by the appellee, that in 1858 the deceased, " for the consideration of $3,000 received of Catherine B., wife of Joel T. Green, *in trustee for Susan Green*." gave a deed of certain lands, the deed in other respects being in the usual form without any further indication of its being in trust ; that the deceased afterwards took out guardianship for Susan Green, she being a minor of about five years of age ; and that Mr. and Mrs. Green, on the 9th of January, 1861, for the consideration of $2,200, joined with him as such guardian in a deed of the same property to Hezekiah Scoville, and that the deceased, in violation of his duty as a guardian, permitted the whole purchase money to go into the hands of Joel T. Green, who then was and ever since has been insolvent, in consequence of which the minor has lost her property. The claim does not seem to have been founded on any probate bond, which, from the views entertained by the parties, was probably merely nominal, but upon a neglect of duty.

In opposition to the claim of a trust to be inferred from the language of the deed, the appellant offered parol evidence to show that the conveyance was made to Mrs. Green in this peculiar manner for a temporary purpose, as a cover from Joel T. Green's creditors, or to pacify Mrs. Green's friends

for the time being ; that the purchase money was principally Mrs. Green's, and that the conveyance was regarded by the parties at the time and the property subsequently treated as the exclusive property of Mrs. Green ; and that Mr. and Mrs. Green subsequently contracted with Scoville to deed the property to him, but that he would not consent to receive a deed from them without a quit-claim of what was supposed to be the nominal interest of Susan Green. He then offered evidence to show that the deceased at the request of Mr. and Mrs. Green took out guardianship of Susan Green, procured an order to sell the minor's interest in this property, joined in the sale, and, supposing that she had only a nominal interest, allowed the said Joel T. Green to take the purchase money, and soon after resigned his guardianship, which resignation was accepted by the court of probate. The decision of the case depended upon the admissibility of this parol evidence, and the legal effect of this and the other evidence in the case.

The question has been very fully discussed before us, whether this deed, which declares a trust, if at all, in a very unusual manner, does or does not create a trust in favor of Susan Green. If it does on the face of it, it would be very difficult to justify the defeat of it by the introduction of parol evidence to prove the understanding or agreement of the parties in opposition to the terms of the deed. But we do not think it necessary to examine this question, as there is a decisive objection to the allowance of the claim on another ground, which does not seem to have been taken before the superior court.

This claim is presented by a minor, and no one appears to be authorized to act for her as her guardian or *prochein ami* but her father. If the money should be collected, it would go immediately into his hands. But if it is already in his hands, with what propriety can he recover it again ? If he was before the appointment of Dickinson the lawful guardian of his daughter, and if on Dickinson's resignation he immediately became her guardian again, with full power to receive and take charge of her personal estate, then the money which was

paid for the land was after the resignation in the proper hands. If Dickinson had received the whole avails it would have been his duty on resigning to deliver the same to Joel T. Green. The important question involved therefore is one which has never before, it is believed, been brought directly before this court, whether, by the law of this state, a father as the natural guardian of his minor children has the right to receive and take charge of their property. There has been much diversity of opinion whether he has at common law such a right. Blackstone says: " A father has no other power over his son's estate than as his trustee or guardian, for though he may receive the profits during the son's minority, yet he must account for them when he comes of age." 1 Bla. Com., 453. He repeats the same doctrine on page 461. Hargrave, in his notes on Coke Littleton, page 88 *b*, note 67, says: " But whether the guardian in socage is entitled to take into custody the infant's personal estate, we have not been able to ascertain by any express authority. However, we are inclined to think that personality is included, except where by the custom of a particular place it happens to be liable to a different custody ; our idea being that the custody of the infant's person draws after it the custody of every species of property for which the law hath not otherwise provided." If this view is correct it will follow that, as the father has an undoubted right to the custody of his minor children, unless he has by misconduct forfeited it, he would in this state, where there is no guardian in socage, have the custody of at least the personal estate of his minor children. On the other hand in a number of cases it has been held that he has no right as guardian by nature to receive the rents and profits of their lands, or to receive their personal estate. *Jackson* v. *Combs*, 7 Cowen, 36 ; *Miles* v. *Boyden*, 3 Pick., 213 ; *Hyde* v. *Stone*, 7 Wend., 354 ; *Isaacs* v. *Boyd*, 5 Porter, 388 ; *Genet* v. *Tallmadge*, 1 Johns. Ch., 3.

It is unnecessary to pursue this inquiry further, because we are clearly of the opinion that, by the statute laws of this state, a father has impliedly at least, if not expressly, the rights of a guardian over his minor children, both as to person and prop-

erty.   In the Revised Statutes, tit. 7, ch. 6, sec. 33, it is pro-
vided, that the courts of probate, in their respective districts,
" may appoint guardians to all minors under the age for choos-
ing guardians, *who have no father*, guardian or master." As
the court is not authorized to appoint a guardian where there
is a father, it follows that the father must be the guardian or
there can be none, and that too at the age of the minor when
there is most need of one.   Again, in section 34 : " If any
minor of age for choosing a guardian has no father, guardian
or master, the judge of probate within whose district the
minor resides, shall notify him to appear and choose some
proper person to be his guardian."   Here too the power of
the court is limited to cases where there is no father.   In sec-
tion 36  provision is made for the appointment of a guardian
over the estate of a minor not derived from the father.   In
such a case it is discretionary with the court to appoint one
or not, and the father would still have the right to the posses-
sion and control of any property derived from him.   That the
legislature have ever since regarded the statutes in this light,
is evident from the statute of 1850, (Comp. 1854, p. 389,)
which provides that if a father is so intemperate as to be inca-
pable of taking care of and providing for a minor, the court of
probate shall appoint a guardian, who shall have full power
(among other things) to keep and manage the earnings and
property of the minor.   From this statute it may be clearly
inferred that if the father is not intemperate he would have
the same rights which otherwise are to be conferred upon a
guardian.

This it is believed has been generally regarded as the law
in this state.   Ch. J. Hosmer, in *Kline* v. *Beebe*, 6 Conn.,
494, discusses elaborately in his usual way the law of guar-
dian and ward.   He quotes apparently with approbation the
doctrine held in *Genet* v. *Tallmadge*, 1 Johns. Ch., 3, regard-
ing the rights of a father as guardian by nature, but when
referring to the statutes above quoted, he takes pains to show
that the mother is not the natural guardian of the estate of a
minor child, from which it may be inferred that in his view
the father is ; especially as he says, " this subject in Connec-

ticut is regulated entirely by statute." He quotes with approbation *Burk* v. *Phips,* 1 Root, 487, in which the court say that the father is the natural guardian of his minor children and entitled to their services, without intimating that he is not entitled to all the rights of a guardian.

We advise that a new trial be not granted.

In this opinion the other judges concurred ; except McCurdy, J., who having tried the case in the court below did not sit.

———•◄●►•———

# SUPREME COURT OF ERRORS.

## NEW HAVEN COUNTY, SEPTEMBER TERM, 1863.

Present,

Hinman, C. J., Sanford, Butler, Dutton and McCurdy, Js.