EPHRAIM PERSON, *Administrator of* CHARLES H. PERSON, *v.* DANIEL CHASE, *Appellant.*

*Infancy. Emancipation.*

An absolute gift of articles of personal property made by an infant, can be revoked or avoided by him, or by his administrator.

Emancipation of an infant by his father does not enlarge or affect his capacity to make a contract.

TROVER for several articles of personal chattels. Plea, not guilty. Trial by jury, April Term, 1864.

It appeared on trial that the plaintiff's minor son Charles, the intestate, made some presents to the defendant's minor daughter Fanny, a young lady to whom the intestate was engaged to be married at the time of and previous to his death ; that these presents were made when he went away into the army ; that he made the said Fanny his agent to draw his pay as a soldier, and to pay what he was owing, and otherwise control said money ; that his estate was owing nothing ; that his father had previously emancipated him ; and that the defendant refused to deliver up the articles when demanded of him by the plaintiff.

The only question submitted to the jury was whether said Charles gave by absolute gift said articles, as the defendant's evidence tended to show. No question was made as to the conversion, in case the plaintiff was entitled to demand and recover said articles. The plaintiff requested the court to hold and charge as matter of law, that Charles, being a minor, could not, though emancipated by his father, make a valid, absolute gift of said property, so as to preclude the plaintiff as his administrator from the right to demand and recover said articles.

The court, BARRETT, J., presiding, declined so to charge, and did charge the jury that if they should find from the evidence that Charles gave by absolute gift said articles to Fanny, as the defendant's evidence tended to show, the plaintiff was not, upon the evidence and facts proved in the case, entiled to recover. To this part of the charge the plaintiff excepted ; verdict for the defendant.

*Butler & Wheeler,* for the plaintiff.

*Charles N. Davenport,* for the defendant.

KELLOGG, J. The question in this case is, whether an absolute gift of articles of personal property made by an infant can be revoked or avoided by him, or by his administrator as his legal personal representative. There is a recognized distinction between those acts of an infant which are *voidable* and those which are *void;* but these terms have been not unfrequently used in statutes, decisions, text books, and contracts in an ambiguous or indefinite sense, and without any regard to strict precision of meaning. The application and import of these terms were very fully considered in *State* v. *Richmond,* 26 N. H., (6 Foster), 232, and in *Pearsoll* v. *Chapin,* 44 Penn. St. R. 9. In *Williams* v. *Moore,* 11 M. & W. 256, Baron PARKE recognizes this indefinite use of the term *void,* and clearly defines its application to the acts and contracts of infants, by saying that an infant's contracts are *void* if by *void* is meant *incapable of being enforced against him;* but that if by *void* is meant *incapable of being ratified,* then they are not *void.* The tendency of modern decisions is to hold the acts, deeds, and contracts of an infant as *voidable* merely. Bingham on Infancy, ch. 2 ; *Bigelow* v. *Kinney,* 3 Vt. 358 ; 2 Kent's Com. 234, *et seq.;* 1 Am. Lead. Cases, (4th ed.), 244, *et seq.*

The rules of law as to infants are made for their protection, and this has been the chief consideration which has been regarded in the adjudged cases in determining the legal character of their acts.

The general principle is, that the infant shall be bound by no contract except for necessaries, and that all other contracts are voidable or confirmable by him at his election ; and the law makes no distinction between contracts *executed* and those *not executed* as to their being voidable. *Abell* v. *Warren,* 4 Vt. 149 ; *Price* v. *Furman,* 27 Vt. 268. Judge REEVE, in his treatise on Domestic Relations, (p. 254,) refers approvingly to a case reported in Keble, showing that if the infant's privilege will not be sufficiently protected by considering his contracts as *voidable,* they will be held *void.* In that case, (*Scroggam* v. *Stewardson,* 3 Keble, 369,) a barber contracted with an infant "above sixteen years old" for the hair growing on her head, "for sixpence in hand paid," and in pursuance of the contract, with the license of the infant, cut all the hair from her head. It was apparent that no way was left to her to avail herself of her privilege without considering the contract as void. She accordingly

brought an action against him for a trespass in forcibly cutting off the hair from her head, and recovered,—the court (of which Lord HALE was the chief justice,) saying that "the infant could not license, though she might agree with the barber to be trimmed." In *Carpe* v. *Overton*, 10 Bing. 252, (25 E. C. L. R. 121,) it was held that the plaintiff might recover back, in an action for money had and received, a sum which, while an infant, he had paid in advance towards the purchase of a share in the defendant's trade, to be retained by the defendant as a forfeiture if the plaintiff failed to fulfill an agreement to enter into partnership with the defendant,—the plaintiff not having actually received any profit or benefit from the business ; and the doctrine is now well settled, that when a contract is avoided by an infant, he may recover back whatever he has paid or delivered on it. *Price* v. *Furman*, *ubi supra*, in which case the right or privilege of infants to avoid their contracts, and the consequences resulting therefrom, are very fully considered and stated.

If an infant cannot trade, nor bind himself by any contract in relation to trade,—if he can neither purchase, nor sell, nor dispose of property, so as to bind himself,—*a fortiori* he cannot bind himself by a gift of his property, even though accompanied by a manual delivery. If the rule was otherwise, the protection which the law extends to him would be completely eluded. Under the laws of this state, (G. S., p. 377, § 4,) an infant cannot make a testamentary disposition of personal estate ; and it would be singular if he should be held competent to make a valid and binding disposition of such property by an executed or executory gift in his lifetime, although clearly incompetent to make any disposition of it by a last will and testament. An infant has no more capacity to dispose of his property by *gift* than he has by *contract*, and it is as essential that he should be protected from the consequences of an improvident gift of his property as it is that he should be protected from the consequences of an improvident contract in respect to it. The emancipation of the infant by his father did not enlarge or affect his capacity to make a contract, and its only effect was to release him from his father's control, and to give to him a right, as against his father, to his earnings. *Taunton* v. *Plymouth*, 15 Mass. 203 ; *Kent* v. *Osgood*, 19 Pick. 572.

42

The privilege of an infant to avoid his acts or contracts is his personal privilege; but it is well settled that, after his death, this privilege extends to his legal personal representatives. Thus, the infancy of a testator is a good plea by an executor to an action on a promissory note made by the testator. *Hussey et al.* v. *Jewett, Ex'r,* 9 Mass. 100; 2 Kent's Com. 236–7; *Jefford* v. *Ringgold,* 6 Ala. 544; *Parsons* v. *Hill,* 8 Mo. 135. If the plaintiff as the administrator of the estate of his deceased son, who was the infant in this case, could effectually avoid or revoke gifts of articles of personal property made by the son in his lifetime, it is clear that a demand of the articles by the plaintiff as such administrator of a party who was in possession of them was a sufficient act of avoidance or revocation of the gift; and no question was made on the trial as to a conversion by the defendant of the articles in controversy in case the plaintiff was entitled as the legal personal representative of his son to demand and recover for them.

These conclusions lead to a reversal of the judgment of the county court and to a new trial in the cause. But, while we are not at liberty to recede from the established rules of law applicable to the subject matter of this litigation, we are not insensible to the impressions of the plaintiff's case which the facts stated in the bill of exceptions, and necessarily found by the jury under the charge of the court, are calculated to produce. We can heartily and without reservation apply to those facts the spirit and sentiment of the language used by HYDE, J., more than two hundred years ago, in delivering his opinion in the Exchequer Chamber in the celebrated leading case of *Manby* v. *Scott,* (reported in 1 Mod. 124,) on the subject of the husband's liability for debts contracted by the wife for necessaries when living separate and apart from him, and say that "this case is the meanest that ever received resolution in this place, but as the same is now handled, it is of as great consequence to all the king's people of this realm as any case can be."

Judgment of the county court for the defendant reversed, and a new trial ordered.