PRISCILLA B. FERGUSON ET AL *v.*    PHOENIX    MUTUAL    LIFE

INSURANCE COMPANY.

November Term, 1910.

Present: ROWELL, C. J., MUNSON, WATSON, AND POWERS, JJ.

Opinion filed May 5, 1911.

*Life Insurance Policy—Infant Beneficiaries—Rights of Beneficiaries and Insured—Surrender by Insured—Effect on Rights of Beneficiaries—Infants—Contracts—Ratification after Majority—Parent and Child—Property of Child—Parent's Rights and Powers—Natural Guardians—Guardians in Socage—Powers—Principal and Agent—Authority of Agent.*

Where a person procures insurance on his life for the benefit of another, the policy and the money to become due thereunder  belong to the beneficiary named therein, and the insured has no power, by deed, will, or otherwise, to transfer, modify, or limit the interest of the beneficiary, unless a power of revocation or modification is reserved by the terms of the policy.

Where a father, when his three children were minors, procured insurance on his life, payable at his death to "his children, equally, or their executors, administrators or assigns", the policy, which reserved no power of revocation or modification, and all the money to become payable thereunder, belonged to the beneficiaries named therein, and their interests were not affected by the surrender of the policy by the insured during their minority, unless they ratified the surrender after attaining their majority.

At common law guardianship in socage occurred only when the infant had lands derived by descent, and continued until he attained the age of fourteen years, and until he selected a guardian for himself; and the guardian in socage had the custody  of the infant's person and of his lands so derived, and also, it seems, of his personalty, but no one who could possibly inherit such lands could be such guardian.

As under our statutes a father may by descent take his infant child's socage estate, a father cannot be a common-law guardian in socage unto his child.

At common law the father, and on his death, the mother, is guardian by nature unto their minor children, which guardianship continues until

the child is twenty-one years of age, but extends only to the custody of the person; and it seems that, strictly, at common law only an heir apparent could be subjected to guardianship by nature.

Our statutes make all children heirs apparent, and P. S. 3144 makes the father and, on his death, the mother, till another is appointed, the natural guardian of each.

Both at common law and under our statute, guardianship by nature extends only to the custody of the person, and gives no control over the infant's property, real or personal.

Where a father, when his three children were minors, procured insurance on his life, payable at his death to "his children, equally, or their executors, administrators or assigns", no power of revocation or modification being reserved in the policy, and later, while two of the children were still minors, but without their acquiescence or consent, for a consideration of which they had no part of benefit, and under a written instrument which he signed, and to which he signed the names of his two minor children as "parent and guardian," surrendered the policy to the insurer, such surrender, as to the two minor children, was a mere nullity, and in no way affected their rights in the policy, nor to the money to become payable thereunder, unless, with full knowledge of the material facts, they ratified the surrender after attaining their majority; for, at the time of the surrender, the father was a mere naked depositary of the policy for the benefit of the beneficiaries named therein, and, as the natural guardian of his two minor children, had no right to it, nor power over it.

Manual possession of the policy was not essential to the rights of the beneficiaries named therein, for the acceptance by the insured of delivery of the policy was an acceptance for the beneficiaries, and, by subsequently holding the policy, the insured made himself a mere naked depositary for those entitled thereto.

The contract of surrender was not the contract of the two minor children, for a consideration, and, therefore, binding on them, unless they disaffirmed it within a reasonable time after attaining their majority, but was the contract of a third person, without legal right or power to interfere with any interest of the beneficiaries named in the policy, and this the insurer was bound at its peril to know; and so the minor children would in no way ratify the surrender either by failure to disaffirm it within a reasonable time after attaining their majority, or by failure within that time to demand the policy from the company.

It is the duty of one dealing with an agent, who has only limited and special authority, to inquire as to the extent of that authority, and, if he omits that inquiry, he does so at his peril.

The burden of establishing the ratification by a person after he attains his majority of a contract affecting his rights made during his infancy, without his consent or acquiescence, by one without power or authority to do so, is on the party asserting such ratification.

GENERAL ASSUMPSIT on a life insurance policy. Plea, the general issue. Trial by court at the September Term, 1910, Chittenden County, *Waterman,* J., presiding. It was held that W. Clark Bishop by his execution of the release hereinafter mentioned, discharged his rights under the policy, and judgment was entered for the other two plaintiffs for $13,333.33. The defendant excepted.

This is an action of general assumpsit by plaintiffs as the beneficiaries named in a policy of insurance issued by defendant November 13, 1871, on the life of Daniel B. Bishop, plaintiffs' father. By the terms of the policy defendant promised that, ninety days after due notice and proof of the death of the insured, it would pay $20,000 to his children, in equal shares. When the policy was issued the insured had three children, namely, W. Clark Bishop, born August 4, 1854; Rufus W. Bishop, born April 4, 1856; and Priscilla B. Bishop, now Priscilla B. Ferguson, born May 10, 1861. The policy recites that the consideration thereof is $9,933, "duly paid by the children of Daniel B. Bishop"; but the premium was in fact paid by the insured's deed to defendant of a certain farm in Jericho, Vermont, called the "Hill Farm"; and it did not appear that said beneficiaries took any part in securing the policy. On March 21, 1877, the insured attempted to surrender said policy to defendant in return for the real estate that it had accepted in payment of the premium; and defendant then accepted surrender of said policy, and delivered to the insured certain notes and a mortgage on said "Hill Farm", which defendant had sold in the mean time; and also conveyed to the insured a certain other farm that it had taken in part payment for the "Hill Farm". This transaction was evidenced by a certain written instrumen, dated March 21, 1877, signed by the insured for himself, and by his eldest child, W. Clark Bishop, who was then of age. The insured also signed to this instrument the names of his other two children, who were then infants, followed by the words, "By Daniel B. Bishop, parent and guardian."

The signing of the names of those two minor children to said instrument was without their acquiescence or consent; nor did it appear that the insured had ever by any authority been appointed the guardian of those two children. On April

6, 1877, Rufus W. Bishop, acting for himself and his sister, Priscilla, notified defendant that the discharge of said policy of insurance was contrary to the wishes of himself and his sister, and that they still claimed any legal right they had under the policy; and on May 23, 1877, Rufus W. Bishop, acting for himself and his said sister, caused an attorney to write defendant that the two younger children, beneficiaries under the policy, treated the policy as in full force so far as they were concerned, and that the surrender was without their acquiescence and against their will; and no subsequent notice or demand was ever given to, or made on, defendant until after the death of the insured, which occurred March 21, 1909. Neither of the plaintiffs ever made any demand on defendant for the return of the policy, and it did not appear that the policy was ever in their possession or the possession of either of them. Shortly after the death of the insured demand was made on defendant by Rufus and Priscilla for payment to them of their share of the $20,000, which was refused on the ground that the policy had been surrendered and cancelled, as above stated. It is found that in negotiating with the insured defendant acted on the advice of counsel and in the utmost good faith. Neither Rufus nor Priscilla ever received from their father any part of the consideration received by him from defendant for the surrender of said policy, nor did they, or either of them, ever offer to return to defendant any part of the property so received by their father from defendant.

*C. S. Palmer and L. F. Wilbur* for the defendant.

The children never furnished any part of the premium of the policy; there never was a delivery thereof to them; and they had no right thereunder. Delivery is an indispensable requisite, both in law and equity; and in order to constitute a completed gift it must be such a delivery as terminates the donor's possession, dominion and control of the thing given. A declaration of an intention to give is not a gift. Gifts are founded on mutual consent of both parties in reference to a right or interest passing between the parties. It has no reference to the future and goes into immediate and absolute effect. *Pope* v. *Savings Bank,*

56 Vt. 284; *Blanchard* v. *Sheldon*, 43 Vt. 512; *Walston* v. *Walston*, 69 Vt. 245; *Carpenter* v. *Dodge*, 20 Vt. 595; *Frost* v. *Frost*, 33 Vt. 639; *Towsley* v. *Healey*, 39 Vt. 522; *Goodrich* v. *Savings Bank*, 81 Vt. 147; *Harris* v. *Clark*, 3 N. Y. 93; *Basket* v. *Hassels*, 107 U. S. 602; *Northrup* v. *Hale*, 73 Me. 66; *Taylor* v. *Heney*, 48 Md. 550; 2 Kent's Com. 438-439.

The father is the natural guardian of his minor children, both at common law and under P. S. 3144, and the natural guardian may have the legal possession and control of his minor child's property, as well as his person until another guardian is chosen or appointed. Schouler's Domestic Relations, §320, p. 476 (4th Ed.); *Pennington* v. *Fowler*, 3 Halstead's Chan. 343; *Alston* v. *Alston*, 34 Ala. 15; 2 Kent's Com. (8th Ed.) 232; Tyler on Infancy & Cov. 246; *Wheaton* v. *East*, 5 Yerger 41; 25 La. Ann. 430.

If the beneficiaries acquired a vested interest in the policy before it was surrendered to the company, the assured was holding and having charge of it for his minor children as their natural guardian and agent, and if the assured exceeded his right or authority in surrendering the policy to the company for a full and adequate consideration, the surrender of the policy and the agreement of surrender and release were not void, but only voidable and subject to ratification by each of the two minors after they arrived at the age of majority. *Baker* v. *Union Life Ins. Co.*, 43 N. Y. 283; *Bickerton* v. *Jacques*, 28 Hun. 119; Tyler on Infancy, 56, 95, 96, 97, 98; *Richardson* v. *Boright*, 9 Vt. 368; *Bigelow* v. *Kinney*, 3 Vt. 353.

*E. C. Mower and J. E. Cushman* for the plaintiffs.

The policy and the money to become due thereunder became the property of the beneficiaries named therein from the moment the policy was issued, and the insured had no right in any way to abridge or modify those rights of the beneficiaries. *Atkins* v. *Atkins*, 70 Vt. 565; *Ricker* v. *Charter Oak Life Ins. Co.*, 27 Minn. 193; *Chapin* v. *Fellows*, 36 Conn. 132. Nor was the attempted surrender and release by the insured, acting as the father and natural guardian of these plaintiffs, of any validity. It is now well settled that the father or mother, as natural

guardian, is guardian of the person only, and has no power of custody or control over the estate, real or personal, of the ward. Schouler, Dom. Rel. 285, 344; 2 Kent 219; *Keeler* v. *Fassett,* 21 Vt. 539; *Schmidt* v. *Shaver,* 89 Am. St. 250 and note at p. 268; *Linton* v. *Walker,* 71 Am. Dec. 105; *Haynie* v. *Hall's Exr. et al.,* 42 Am. Dec. 427; *Foley* v. *Mutual Life Ins. Co.,* 138 N. Y. 333; *Kline* v. *Beebe,* 6 Conn. 494; *May* v. *Calder,* 2 Mass. 55; *Miles* v. *Boyden,* 3 Pick. 213; *French* v. *Hoyt* 6 N. H. 370; *Graham* v. *Houghtalin,* 30 N. J. L. 552; *Genst* v. *Tallmadge,* 1 Johns. Ch. 3; *Kinney* v. *Harret,* 46 Mich. 87; *Kendall* v. *Miller,* 9 Cal. 591; *Sherwood* v. *Neal,* 41 Mo. App. 416; *Missouri Pacific Ry. Co.* v. *Lasca,* 21 L. R. A. (N. S.) 338; *Barber, Adm'r.* v. *Thompson,* 49 Vt. 213; *Sargent* v. *Baldwin,* 60 Vt. 17; *Howard* v. *Howard,* 60 Vt. 362; *Conn. River Savings Bank* v. *Albee,* 64 Vt. 571; *Williams* v. *Haskins's Est.,* 66 Vt. 378; *Wade, Admr.* v. *Button et al.,* 72 Vt. 136.

Apart from retention of the consideration of a contract, or other affirmative conduct inconsistent with the theory that the infant intends to take advantage of the privilege of infancy, there can be no ratification by him, by mere acquiescence. *Boody* v. *McKenney,* 23 Me. 517; *Prout* v. *Wiley,* 28 Mich. 164; *Shipp* v. *McKee,* 80 Miss. 741, 92 Am. St. Rep. 616; *Thomas* v. *Pullis,* 56 Mo. 211; *Green* v. *Green,* 69 N. Y. 553, 25 Am. Rep. 233; *Cresinger* v. *Welch,* 15 Ohio 156, 45 Am. Dec. 565; *Birch* v. *Linton,* 78 Va. 584, 49 Am. Rep. 381; *Gillespie* v. *Bailey,* 12 W. Va. 70, 29 Am. Rep. 445; *Irvine* v. *Irvine,* 9 Wall. 617; *Tucker* v. *Moreland,* 10 Pet. 59; *Voorhies* v. *Voorhies,* 24 Barb. 150; *N. H. Mutual Fire Ins. Co.* v. *Noyes,* 32 N. H. 345; *Phillips* v. *Green,* 13 Am. Dec. 124; *Hoffert* v. *Miller,* 86 Ky. 572. If an infant, after attaining his majority, continues to occupy a position explicable only on the supposition that he intends to stand by his contract, he will be considered as having ratified it. *Bigelow* v. *Kinney,* 3 Vt. 302; *Forsyth* v. *Hastings,* 27 Vt. 646; *Baxter* v. *Bush,* 29 Vt. 465; *Hatch* v. *Hatch,* 60 Vt. 160. But here was nothing to affirm. Here was no contract made by the infant during minority, but a contract made by a meddler, who had no authority to do so. The rule invoked in this respect has no application. *Keeler* v. *Fassett,* 21 Vt. 539; *Ricker* v. *Charter*

*Oak Life Insurance Co.*, 38 Am. Rep. 289; *Chapin* v. *Fellows*, 4 Am. Rep. 49.

WATSON, J. There is nothing to take this case out of the general rule laid down in *Atkins* v. *Atkins*, 70 Vt. 565, 41 Atl. 503, "that a policy of life insurance, and the money to become due under it, belong, from the time it is issued, to the person or persons named in it as the beneficiary or beneficiaries, and that there is no power in the person procuring the insurance by any act of his, by deed or will, to transfer to any other person the interest of the person named, nor to modify and limit such interest. An irrevocable trust is created". The Court there further said: "The person who procures insurance on his own life payable to a beneficiary named in the policy, thereby creates in effect a voluntary trust, and what is equivalent to a voluntary settlement, for the benefit of such beneficiary, and when such a trust or settlement is created, it cannot be annulled nor modified by the act or declaration of the party creating it, unless a power of revocation or modification is reserved by the terms of the trust for that purpose." There, as in the case at bar, the insurance was procured and the premiums paid by the father, and in each instance the beneficiaries named in the policy were the children of the insured. The only difference being that in the Atkins case the beneficiaries took through a person named in the policy as trustee, while in the case before us they took directly under the policy.

The whole consideration for the policy in question was paid by the insured at the time of its execution and delivery by the company, and no power of revocation, modification, or surrender is reserved to him in the policy, by which the interests of the beneficiaries could be impaired.

One contention of the defendant is, that since the policy was payable at the insured's death to "his children, equally, or their executors, administrators or assigns," the interests of the several children were so contingent and uncertain that no rights could vest in them until the death of the insured, and consequently he had the power to surrender the policy to the company. This position cannot be sustained. In *Brooklyn Life Ins. Co.* v. *Bledsoe*, 52 Ala. 583, it was held that the desig-

nation of beneficiaries merely as the children of the insured was proper and not void for uncertainty.   And in *Ricker* v. *Charter Oak Life Ins. Co.*, 27 Minn. 193, 38 Am. Rep. 289, 6 N. W. 771, the policy on the life of the husband and father, issued on his application and all premiums paid by him, was payable upon his death to his wife, and in case of her death before his decease, to his children, or to their guardian, if minors, for their use and benefit.   After all premiums stipulated by the policy were fully paid, the wife died, survived by the husband and several children. The husband, marrying again, surrendered the policy, which was cancelled, and a new one issued in its place, inuring by it terms, "to the sole and separate use and benefit" of the second wife.   On the death of the insured that suit was brought by the children on the original policy.   It was held that at the time of the surrender the children were the owners of the policy; that the insured had no legal or equitable interest therein; and that the act of surrender and cancellation was a nullity and could not affect the rights of the children, who alone could release the insurer from the obligation the policy contained. To the same effect is *Chapin* v. *Fellows*, 36 Conn. 132, 4 Am. Rep. 49.   See also *Harley* v. *Heist*, 86 Ind. 196, 45 Am. Rep. 285; Brown's Appeal, 125 Pa. St. 303, 11 Am. St. Rep. 900.

We therefore hold that the policy in question and the money to become payable under it were owned by the beneficiaries named from the time of the issue of the policy, and that their interests therein were not affected by the surrender of the policy by the insured, unless being of full age, they concurred therein, or ratified the same after attaining that age.

W. Clark Bishop, a beneficiary of the age of majority, joined in the contract of surrender, and no question is made but that he is bound thereby.   The question of ratification by the other beneficiaries is considered in a later paragraph.

It is urged that the father is the natural guardian of his minor children, both at common law and by statute (P. S. 3144), and that the natural guardian may have the legal possession and control of the property, as well as the person, of his minor child, until another guardian is chosen or appointed; that (in the language of defendant's brief) "the natural guardian takes the place of the guardianship in socage (now in disuse) until

another guardian is chosen or appointed, and until such appointment the father is a *quasi* guardian."

It is true that at common law a guardian *in socage* has the custody of the infant's lands acquired by descent, as well as of his person, and no one who can possibly inherit the infant's lands so acquired can be such guardian.   This guardianship continues until the infant arrives at the age of fourteen, and until he selects a guardian for himself; but it takes place only when the infant derives lands by descent.   Lord Chief Baron Comyns says that if an infant claims land by purchase, not by descent as heir, he shall not be in ward.   Comyn's Digest, Tit. Guardian B2; Co. Litt. 87 b.; 88 b. note 13.; *Quadring* v. *Downs*, 2 Mod. 176; 2 Kent's Com. 11th Ed. 237.   In note 13, Co. Litt., to which reference is made above, Mr. Hargrave says that whether the guardian in *socage* is entitled to take into his custody the infant's personal estate, he has not been able to ascertain by any express authority, but he is inclined to think that the personalty is included, except where by the custom of a particular place it is liable to a different custody.   And Chancellor Kent says that Mr. Hargrave supports his opinion in this respect by strong reasons.   2 Kent's Com. 11th Ed. 238.   As under our statute a father may take the infant's *socage* estate by descent, he cannot at common law be guardian by socage. 2 Kent Com. 11th Ed. 237; *Fonda* v. *Van Horne*, 15 Wend. 631, 30 Am. Dec. 77.   However, it is unnecessary to notice further the principles of the common law governing such guardianship; for certain it is that, since the infants Rufus W. and Priscilla B. are not shown to have had any land whatever, the rights, powers, and duties of a guardian *in socage* afford no analogy to the rights, powers, and duties of the insured in this case as natural guardian either at common law or under the statute.

Guardian by nature at common law is the father, and on his death, the mother, and continues until the child is twenty one years of age; but it extends only to the custody of the person. "According to the strict language of our law," says Mr. Hargrave in Note 12, Lib. 2, Ch. 5, Sec. 123, Co. Litt., "only an *heir apparent* can be the subject of guardianship by nature;   *   *   * Therefore when *guardianship by nature* is extended to children

*in general,* or to any besides such as are *heirs apparent,* it is not conformable to the legal sense of the term amongst us, but must be understood to have reference to some rule independent of the common law." The law is stated to the same effect by Lord Chief Baron Comyns. Comyn's Digest, Tit. Guardian, C. In this respect, however, the common law is modified by statute in this State, making all children heirs apparent, and (P. S. 3144, upon which defendant relies) the father is made the natural guardian of each, and if he be dead, the mother until another is appointed. Yet as the statute does not define the rights, powers, and duties of such guardian, they must be taken to be the same as at common law. By that law guardianship by nature extends only to the custody of the person. It gives the father no right or control over the infant's property, real or personal. Comyn's Digest, Tit. Guardian C; Bacon, Abr. Tit. Guardian A; Co. Litt. 84. a. In *Dagley* v. *Tolferry,* 1P. Wms. 285, Lord Chancellor Cowper, affirming the decree of the master of the rolls, held that the payment to the father, as natural guardian, of a legacy given to an infant was ill, and a decree went against the executor for a repayment of the legacy. Referring to this case, Chancellor Kent says that whether the guardian by nature was entitled to the possession of the personal estate of the infant and could give a competent discharge to an executor on the payment of a legacy belonging to the child, was doubted for some time in the books, and it was finally understood that he could not. He says: "It would seem, therefore, that if a child becomes vested with personal property only, in the lifetime of the father, there is no person strictly entitled to take it as guardian, until a guardian has been duly appointed by some public authority." 2 Kent's Com. 11th Ed. 234; *Genet* v. *Tallmadge,* 1 Johns. Ch. 3; *Combs* v. *Jackson,* 2 Wend. 153, 19 Am. Dec. 568; *Miles* v. *Boyden,* 3 Pick. 213. *Keeler* v. *Fassett,* 21 Vt. 539, 52 Am. Dec. 71, was an action of trover for a writ of execution issued upon a judgment in favor of the plaintiff, an infant, against one Scott. This writ of execution was pledged to the defendant Fassett by the father of the plaintiff, to secure a debt due from him to Fassett. It was held that the father derived no right from his mere relation to the plaintiff, to make a sale or transfer of her property, and much less to

dispose of it in satisfaction or security of his own debts. In *Baker* v. *Baker*, 41 Vt. 55, it was held that the father is not entitled to the property of his children while they are minors, except so far as it is the result of their services which belong to him; that property derived from other sources or by other means, they hold in their own right, and the father has no claim upon it. In *Sequin* v. *Peterson*, 45 Vt. 255, 12 Am. Rep. 194, it was held that as the father is bound to provide for the maintenance of his infant children, he is entitled to their earnings and to the custody of their persons.

It is further urged that if it be held that the beneficiaries acquired a vested interest in the policy before it was surrendered to the company, the insured was holding it as their natural guardian and agent, and if he exceeded his right or authority in surrendering the policy, the agreement of surrender was not void, but voidable, and subject to ratification by each of the beneficiaries after arriving at the age of majority; and that if the beneficiaries would hold the policy in force, it was incumbent upon each of them after reaching that age to disaffirm the act of their father in making the surrender, and give the father and the company notice of such disaffirmance. The record shows that neither Rufus W. nor Priscilla B. ever had any of the property, nor the benefit of any of the property, by the company passed over to the insured in consideration of the surrender, nor the equivalent of such property or any part thereof, and never claimed it, nor made any demand therefor upon their father. Nor did they demand the policy of the company.

It was not essential to the interests of the beneficiaries that they have the manual possession of the policy. In the circumstances of the case, the taking delivery of the policy from the company by the insured constituted an act of acceptance for the named beneficiaries, and in subsequently holding the same he made himself a naked depositary, without any interest, for those entitled thereto. And since the insured had no legal or equitable interest in the policy at the time of its surrender, and as natural guardian had no right to it, nor power over it, his act of surrender was a nullity and could not affect the rights of Rufus W. and Priscilla B., then minors (*Ricker* v. *Charter Oak Life Ins. Co.*, cited above), unless they with full

knowledge of the material facts ratified the same after arriving at full age. The instrument of surrender was signed by the insured for himself, and without the acquiescence or consent of Rufus W. or Priscilla B., and, entirely upon his own motion, their names were signed thereto by him as "parent and guardian". Notwithstanding this act of surrender by the insured was a nullity as to the two minor children whose names he thus signed, yet he assumed to act for them in the execution of the instrument, and there should seem to be no reason why there might not be an affirmation by them after attaining the age of majority. It should be borne in mind, however, that the contract of surrender was not the contract of the infants themselves, for a consideration, and therefore of binding force unless notice of disaffirmance be given by them within a reasonable time after attaining full age (*Richardson* v. *Boright*, 9 Vt.368), but it was the contract of a third person without legal right or power to interfere with any right or interest had by the beneficiaries in the policy or the money to become payable thereon. At most the authority of the insured to hold the policy for the owners thereof was special and limited, which the defendant was bound at its peril to know. The well established doctrine of the law of agency is here applicable, that "whoever deals with one having only a special and limited authority, is bound at his peril to know the extent of the authority. If the agent exceeds it, the principal is not bound, and the contract, as to him, is void." *White* v. *Langdon*, 30 Vt. 599. The claim of the defendant that by omitting to notify it and the insured of a disaffirmance within a reasonable time after coming of full age, Priscilla B. ratified the contract of surrender, cannot be sustained. A similar claim in principle was made by the defendant in the case last cited. There the action was trover for the conversion of a horse which the plaintiff had sold to one McLeran (only part of the purchase money being paid), with the condition that it was to remain the plaintiff's property until paid for. McLeran took and held possession of the horse until it was traded by him to the defendant. The plaintiff gave McLeran leave to trade off the horse, "provided the pay or the avails were paid to him, the plaintiff." The Court said the fair meaning of this authority was, that McLeran could not

trade off the horse, unless the pay or avails came directly to the plaintiff. It was found that McLeran violated his authority, in that he sold, or rather exchanged, the horse for other horses, with the defendant, and the pay or avails were not paid or delivered to the plaintiff. The case did not show that the plaintiff knew of the trade until between three and four months after it was made. It did show, however, that he gave the defendant no notice of his lien for some three months more. The defendant claimed that the plaintiff, by such omission to give notice and make claim to the horse, had ratified the sale of McLeran. It was held that the horses for which the horse in question was exchanged did not become the property of the plaintiff; that as to the plaintiff the contract was void for want of authority; and that the failure to give notice of his claim to the horse, to the defendant, was not a ratification of the sale. On this last question the Court said that to give it the effect of ratification "would be reversing the rule of law. It is the duty of one trading with an agent who has only a limited and special authority, to make inquiry as to the extent of the agent's authority; if he omits inquiry, he does so at his peril. It is not the duty of the principal, upon hearing of the sale by the agent, to seek the purchaser and give him notice of his claim, and his omission to do so, and his mere silence, are not ordinarily to be construed as a ratification of the sale."

In the case at bar it is found that Rufus W., immediately on coming of full age, acting for himself and for Priscilla B., notified the defendant that the discharge of the policy in question, as far as he and his sister were concerned, was contrary to their wishes, and that any legal rights had by them under the policy, they still claimed. It is argued that this was no notice by Priscilla B., because being then a minor, she could not authorize an agent to act for her. If notice of disaffirmance by her were necessary, in order to avoid the contract of surrender, there might be some question whether the defendant can successfully claim to stand unaffected by the notice given through her agent, on the ground of her legal incapacity to appoint such agent during infancy, a privilege personal to her (*Person* v. *Chase*, 37 Vt. 647, 88 Am. Dec. 630); but since, for reasons above stated, the contract of surrender was void as to her, the defendant,

relying upon a ratification by her in full age, has the burden of establishing it.  *Norris* v. *Wait,* 2 Rich. Law 148, 44 Am. Dec. 283.  This the defendant has not done.  The most that can be said on the facts presented is, that on reaching the age of majority Priscilla B. omitted to notify the defendant of a disaffirmance within a reasonable time, and neither she nor Rufus W. demanded the  policy.  On the authority of *White* v. *Langdon,* she was not in  duty bound to give such notice, and a failure to do so cannot be construed as a ratification. Nor was the failure to demand the policy of the company of greater force in law.  The company took the policy with full notice of the rights of the beneficiaries not joining in the surrender; that as to them the policy remained in full force.  The company, taking the policy from one having no authority over it, other than that of a mere naked depositary, without interest, for those entitled thereto, can stand no better.

Some exceptions were saved relative to evidence, but none are noticed in defendant's brief.

*Judgment affirmed.*