Joseph H. LAMB, (Plaintiff) Respondent,

v.

NEW YORK LIFE INSURANCE COMPANY,
(Defendant) Appellant.

No. 31493.

St. Louis Court of Appeals.

Missouri.

Feb. 18, 1964.

On Denial of Rehearing March 12, 1964.

Hocker, Goodwin & MacGreevy, Henry S. Stolar, St. Louis, for appellant.

Edward W. Fredrickson, St. Louis, for respondent.

FRANK D. CONNETT, Jr., Special Judge.

Plaintiff-respondent, Joseph Lamb, brought this action against defendant-appellant, New York Life Insurance Company, for a Declaratory Judgment declaring and determining plaintiff's rights in and to five (5) certain insurance policies issued by defendant. The parties entered into a stipulation as to the facts necessary to a determination of the issue. By the terms of these policies, plaintiff was the named "insured" and plaintiff's father, Woodrow Lamb, was named "applicant", and as such was given all of the powers of an insured (except to designate an irrevocable beneficiary) prior to the anniversary of the policies on which insured's (plaintiff's) age at the nearest birthday was twenty-one. This specifically included the right to borrow money against said policy during plaintiff's minority. These five policies were part of an insurance program begun in 1941 when plaintiff was less than one year old and designed to create a college educational fund for plaintiff. These policies were each Twenty Pay Life with a face value of $5,000. Two of them provided endowments at age 65, and with plaintiff, the insured, as beneficiary of the endowments.

On November 10, 1952, plaintiff's parents were divorced in Arkansas. The divorce decree required plaintiff's father to continue to pay the premium of these insurance policies until plaintiff became of age and to "refrain from borrowing against said policies or otherwise depleting their value." The decree further required him to pay $300 per month to plaintiff's mother, $150 allocated to alimony and $150 to child support. In June 1955, plaintiff's mother sent a copy of this decree to the defendant and received this reply:

"I have discussed your letter and enclosures with our office of General Counsel and they have advised me to mark our records that no action may be taken without reference to the divorce decree dated November 12, 1952."

In December, 1957, following an inquiry by plaintiff's mother, defendant wrote that no cash payments could be made on such insurance policies without first securing a modification of the divorce decree.

By July, 1959, plaintiff's father was in default in the payment of alimony and child support per terms of the decree; plaintiff was anticipating entering college; and plaintiff's mother was threatening action against his father to enforce payment of the alimony and support payments in order to pay for plaintiff's freshman year of college.

In August, 1959, without notice to plaintiff or his guardian, plaintiff's father made loans totaling $4,267.55 on the five insurance policies here involved, and defendant issued checks to plaintiff's father in that amount.

On August 18, 1959, plaintiff's father cashed four of the checks totaling $2,600.66,

and on the same day the father deposited $2,000.00 in a checking account for the benefit of plaintiff. During the next nine months he deposited $655.75 more in this account. With the exception of one check for $24.77, drawn by his father, plaintiff used said account to purchase clothes and to pay the majority of his expenses at school during the first year.

By June, 1960, except for the payments described in the preceding paragraph, plaintiff's father had made no payments of alimony or support money for a year; and plaintiff's mother was again threatening action to enforce this obligation, and for the first time she learned of the policy loans made in August, 1959.

On September 1, 1960, plaintiff's mother, by her attorney, wrote defendant reminding it of the court decree and of its acknowledgment of the terms thereof, and on October 6, 1960, the defendant replied as follows:

"I agree with you, Dr. Lamb was restrained by court order and should not have applied for the loans which were completed on five policies involved in the court order.

"We are writing to him regarding this situation and trust that there will be no difficulty in the matter. Naturally, no further payments will be made to him."

On October 31, 1960, the Arkansas divorce court approved a stipulation between the plaintiff's father and mother providing for (and we quote from defendant's brief): "(a) the absolute assignment of the insurance policies by plaintiff's father to plaintiff's mother, 'subject only to existing loans against the policies' (b) sole ownership of and full dominion over the policies by plaintiff's mother (c) the naming of plaintiff as beneficiary of the policies, (d) the termination of the duty on the part of plaintiff's father to pay premiums on the insurance policies, (e) the payment by plaintiff's father of $2,000.00 to plaintiff's mother, (f)

the release by plaintiff's mother of all past, present, or future alimony and support claim, and (g) the assumption by plaintiff's mother of the obligation to support, maintain and educate plaintiff until his majority."

Plaintiff at the time of the trial was twenty-one years old and entitled to all the rights of an insured under these policies. The precise question before the trial court was whether the interest of plaintiff in these insurance policies had been affected by loans made to plaintiff's father by defendant. Is plaintiff's interest in these policies subject to the loans made by defendant to plaintiff's father in the amount of $4,267.55? The trial court found that they are not.

On the defendant's motion for a new trial being overruled, the defendant appealed.

■ Defendant's first contention is that the Circuit Court did not have jurisdiction to render a declaratory judgment because plaintiff had an adequate remedy at law by cashing in his policies, and then when defendant withheld the amount of the loans, plaintiff could sue at law for the amount withheld. The factor which keeps this from being an adequate remedy is that plaintiff is not required to cash in his policies and he should be able to ascertain his interest therein without so doing. He may want to keep his insurance in force. Furthermore, a suit to construe a contract of insurance is properly brought under Section 527.-020, RSMo 1959, V.A.M.S., of the Declaratory Judgment Act. Pennsylvania Casualty Company v. Suburban Service Bus Company, Mo.App., 211 S.W.2d 524. This is particularly true in cases like this one, where there was no dispute as to the facts.

■ Defendant further contends that the Court could not render judgment in this case because of the absence of an indispensable party, i. e., plaintiff's father. Defendant failed to raise this point in the trial court by either motion or answer, nor did it raise it in its motion for a new trial. It

has waived the claimed defect and, further, it cannot raise this issue in this court for the first time. See Section 509.340, RSMo 1959, V.A.M.S.; Ray v. Nethery, Mo., 255 S.W. 2d 817; Casper v. Lee, 362 Mo. 927, 245 S.W.2d 132. See also Section 512.160, RSMo 1959, V.A.M.S.

Defendant's third contention is that judgment should have been entered for it because, although it should not have made the loans to plaintiff's father, the 1960 stipulation between plaintiff's mother and father discharged it from its liability to plaintiff for having made these loans. The stipulation provided that these policies "will be assigned by Woodrow McDonald Lamb to Jane Davis Lamb absolutely, and Woodrow McDonald Lamb shall take such action as may be necessary to cause all interest which he, or any other person other than the New York Life Insurance Company and Joseph H. Lamb, may have in said policies to be assigned and vested in Jane Davis Lamb, subject only to existing loans against the policies." It further provided:

"It is understood and agreed that Jane Davis Lamb shall be the sole owner of the said policies and shall have full power, right and authority to cash, pledge, or borrow against the said policies, or to surrender them for different forms of insurance."

The defendant argues that the clause "subject only to existing loans against the policy", and other language in the stipulation referring to these loans, recognize these loans, ratified the making of them, and subjected the cash surrender value of the policies to these loans.

Although plaintiff's mother's interest was referred to in the stipulation as that of "owner", the correct term was "applicant", because the policies did not provide for an "owner". They provided only for a "beneficiary", an "insured", and an "applicant", whose interest ceased when "insured" became of age. It may be that the interest transferred, or attempted to be transferred

to plaintiff's mother, would be subject to these loans, but we are here concerned with plaintiff's interest.

Plaintiff had an interest as the "insured", separate and apart from that of his father as "applicant". This interest under the terms of the policies and the terms of the original divorce decree could not be affected by any action of the father, nor of the mother, who was not a party to the insurance contract, prior to her becoming in 1960 the "applicant" unfettered by the original divorce decree. The stipulation was between plaintiff's mother and father. Plaintiff's father transferred to plaintiff's mother all the interest he had, that of the "applicant". He could transfer no more. Plaintiff as the "insured" had a proprietary right and interest in the monetary value of these policies of insurance which was not and could not have been diminished by any agreement made between his mother and father, even though approved by the divorce court. See Wilson v. Kansas City Life Ins. Co., 233 Mo.App. 1006, 128 S.W.2d 319. Also, Ferguson v. Phoenix Mutual Life Ins. Co., 84 Vt. 350, 79 A. 997, 35 L.R.A.,N.S., 844.

Defendant argues that the 1960 stipulation foreclosed the plaintiff's right to recover the loans. However, plaintiff does not seek to recover the money loaned. He seeks to have his policies free of the lien of these loans. The loan agreement was between defendant and plaintiff's father, by virtue of the divorce decree and defendant's acknowledgment thereof, and it did not affect plaintiff's interest in the policies. The loan created a debtor-creditor relationship between defendant and plaintiff's father. Defendant is simply an unsecured creditor of plaintiff's father.

Defendant's last contention is that to allow plaintiff to recover would be to allow him a double recovery and to thereby unjustly enrich him. Defendant's theory is that since plaintiff's father paid $2,630.98 ($2,655.75 less $24.77), to plaintiff during

the 1959–1960 school year, after having made these loans amounting to $4,267.55; and that since he paid plaintiff's mother in the 1960 agreement $2,000.00, some of which may have been used for plaintiff's benefit; if defendant owes plaintiff anything, it is only the difference between $1,636.57 ($4,-267.55 less $2,630.98), and that amount actually used for his support between October 30, 1960, and February 28, 1962, when plaintiff became 21, nearly sixteen months' time. The defendant argues that the $2,630.98 and the $2,000.00 were from the insurance loans proceeds and were used for the purposes for which the insurance policies were intended—the support and the education of plaintiff, and that since plaintiff actually received the proceeds of these loans, he was not injured. However, plaintiff in his brief points out that from June, 1959 to June, 1960, defendant made no payments of child support or alimony and by October, 1960, when he paid plaintiff's mother $2,000.00, he was in arrears $4,800.00. The transcript further shows that plaintiff's father was relieved of this arrearage and of all future obligations to make alimony and child support payments, although it was sixteen months until plaintiff would become 21.

By the terms of the divorce decree, plaintiff's father was required to support plaintiff and to create and maintain what amounted to an estate for him by the means of these insurance policies. These were two separate obligations running from plaintiff's father to plaintiff. Plaintiff cannot be said to have been unjustly enriched when he has received no more than that to which he was entitled, his estate and his support.

It is apparent to the Court that the payments to plaintiff and to plaintiff's mother of $4,630.98, should be charged to plaintiff's father's obligation of alimony and child support and should not be used to offset defendant's obligation to plaintiff under their contracts of insurance.

The trial court's judgment for plaintiff is in all respects affirmed.

WOLFE, Acting P. J., and ANDERSON, J., concur.

RUDDY, J., not participating.

## ON MOTION FOR REHEARING OR TO TRANSFER TO THE SUPREME COURT.

PER CURIAM:

Defendant, appellant, files a motion for a rehearing or to transfer to the Supreme Court on the grounds that the court overlooked two points in the following statement from the opinion: "Plaintiff, as the insured, had a proprietary right and interest in the monetary value of these policies of insurance which was not and could not have been diminished by any agreement made between his mother and father even though approved by the divorce court." Defendant states that we should have applied the law of Arkansas rather than the law of Missouri, and, secondly, that plaintiff's mother was a Missouri legal guardian rather than a natural guardian, noting that the two cases cited for the above proposition concerned natural guardians rather than legal guardians.

■ Neither the appellant, nor respondent, cited any Arkansas cases which were in point, and appellant on page 11 of his reply brief stated that it wouldn't make any material difference whether we applied Missouri law or Arkansas law. The Court on independent research was unable to find any Arkansas cases or statutes on the point. Furthermore, if plaintiff's mother acted in her capacity as a Missouri Probate Court-appointed guardian of his estate, no Arkansas Court would have jurisdiction to do anything to affect that estate.

■ Neither party briefed the question as to what the effect would be if plaintiff's mother, in negotiating the 1960 modification of the divorce decree, were acting in her capacity as an appointed guardian

of plaintiff's estate. However, it is the opinion of the court that it doesn't make any difference if she were acting in such capacity because, if this decree were to be construed as defendant contends, then the decree would be detrimental to the estate of the ward, the plaintiff in this case; and the mother, as guardian, would have no authority to do anything detrimental to the ward's estate and her action would be void. See In re Farmers' Exchange Bank of Gallatin, 327 Mo. 640, 37 S.W.2d 936, 82 A.L.R. 22.

Therefore, the Motion for a Rehearing is overruled.