### WASHINGTON LIFE INSURANCE COMPANY v. ROSA BERWALD.

#### No. 1243.  Decided November 5, 1903.

**1.—Practice in Supreme Court.**

Where a requested instruction was not correct in law the Supreme Court will sustain the appellate court in overruling an assignment of error based on its refusal, without reference to the correctness of their ruling that there was no evidence warranting the giving it.  (P. 115.)

**2.—Insurance—Interest in Beneficiary—Surrender by Insured.**

The beneficiary named in a policy of insurance has an interest in the contract which precludes its termination by agreement between insurer and insued except upon conditions fixed by the policy.  (Pp. 115, 116.)

**3.—Same—Case Stated.**

A policy of insurance on the life of a husband for the benefit of his wife, issued by a New York company and governed by the laws of that State which forbade forfeiture for nonpayment of premium except upon written notice, was not avoided, in the absence of such notice, by an understanding between insurer and insured, who was in default, without the concurrence of the beneficiary, that it was to be abandoned.  (Pp. 113-117.)

Error to the Court of Civil Appeals for the Fifth District, in an appeal from Dallas County.

Rosa Berwald sued the insurance company and had judgment against it.  Defendant appealed, and on affirmance obtained writ of error.

*Etheridge & Baker,* for plaintiff in error.—The court erred in refusing to peremptorily instruct a verdict for plaintiff in error, in that the statute of the State of New York requiring life insurance companies, as a condition precedent to the right to forfeit a policy for nonpayment of premium, to give the notice therein prescribed, has no application to a policy issued upon the life of one who has no postoffice address in the State of New York.  Burgess v. Hargrove, 64 Texas, 115; Sneed v. Falls County, 91 Texas, 170; Brandling v. Barrington, 6 Barn. & C., 467, 475; Guthrie v. Fisk, 3 Barn. & C., 178, 183; Black, Int. of Laws, 191; Suth. Stat. Const., sec. 238.

In the first place, it is respectfully submitted that the language, "shall be construed according to the law of the State of New York," is not sufficient as an adoption of the statute in question requiring notice, because that statute can not be said to constitute a law of construction.

In the second place, it is respectfully submitted and strenuously insisted that if the language last above quoted is sufficient to embrace in the contract the statute in question requiring notice, still it does not have the effect to broaden the scope of the statute.  In other words, it is submitted that the adoption of the laws of the State of New York by reference thereto in the contract is the same, in so far as the legal effect is concerned, as if those laws attached ex propria vigore by reason of the execution and delivery of the contract within the territory within which those laws obtain, that is, within the State of New York.

The Court of Civil Appeals erred in amending the statute of New

York so as to add to the requirements thereof an additional one to the effect that it was incumbent upon plaintiff in error to give notice to an assured who had no known postoffice address in the State of New York, and whose only postoffice address was Dallas, Texas.

Oral negotiations and agreements occurring before and at the time of the execution of written contracts are to be treated as merged into such written contracts, and it is not admissible to prove them in variance or contradiction of the terms of-the writing. Insurance Co. v. Chowning, 8 Texas Civ. App., 455.

Policies of life insurance are contracts to be kept in force from year to year, at the will of the insured. The right to keep a policy alive by the payment of the stipulated premiums is a privilege secured to the insured by his agreement with the insurer. He may exercise or abandon this privilege at his discretion; but if he does abandon it, those beneficially interested can not complain that the insurer refuses longer to be bound by a contract that has lost all the elements of mutuality. Insurance Co. v. Grigsby, 73 Ky., 310; Insurance Co. v. Brant, 47 Mo., 419; Association v. Parham, 80 Texas, 518; Insurance Co. v. Chowning, 8 Texas Civ. App., 455; Insurance Co. v. Myers, 59 S. W. Rep., 30.

*W. P. Finley* and *Israel Dreeben,* for defendant in error.—A contract by an insurance company of New York executed elsewhere may, by its terms, incorporate therein the statute of New York, which provides that there can be no forfeiture of a policy of life insurance during the period of one year from the date of a default in the payment of any premium, unless the notice required by the said statute was served upon the assured, and in addition thereto the said contract may make the provisions of the said statute controlling upon both the insured and the insurer. New York Life Ins. Co. v. English, 96 Texas, 268; New York Life Ins. Co. v. Orlopp, 25 Texas Civ. App., 284; Mullen v. Mutual Life Ins. Co., 89 Texas, 260; Mullen v. Mutual Life Ins. Co., 32 S. W. Rep., 912; Manhattan Life Ins. Co. v. Fields, 26 S. W. Rep., 280; Nall v. Provident Savings Life Assur. Soc., 54 S. W. Rep., 109; Mutual Life. Ins. Co. v. Cohen, 45 Law Ed. U. S. Sup. Ct., 185; Insurance Co. v. Smith, 41 S. W. Rep., 680.

Where the New York laws are a part and parcel of the insurance contract, should there be an extension of credit for some specified time by the company in the payment of any premium, there can be no forfeiture of the life policy for the period of one year from the default in the payment of the premium, unless the company has served the insured with such a notice as is required by the statute at the expiration of the credit extended in the payment of such premium. New York Life Ins. Co. v. English, 96 Texas, 268; New York Life Ins. Co. v. Orlopp, 25 Texas Civ. App., 284; Insurance Co. v. Smith, 41 S. W. Rep., 680; Strauss v. Insurance Co. (Sup.), 67 N. Y. Supp., 509; Seiders v. Merchants Life Assn., 93 Texas, 194.

Where the wife of the insured is the beneficiary of the life policy,

which is subject to the operation of the statute of New York, it is not within the power of the insured, by nonpayment of a premium or by waiver or abandonment, to relinquish or cancel the wife's right in the life policy, unless she should agree thereto. In this case there was no evidence of the wife's agreement as to the alleged abandonment by Berwald of the said policy. New York Life Ins. Co. v. Orlopp, 25 Texas Civ. App., 284; Mutual Life Ins. Co. v. Dingley, 49 Law. Rep., Ann., 132; Mutual Life Ins. Co. v. Hill, 49 Law. Rep. Ann., 127; Mutual Life Ins. Co. v. Hill, 44 Law Ed. U. S., 1097; Mutual Life Ins. Co. v. Sears, 44 Law Ed. U. S., 1096; Insurance Soc. v. Trimble, 83 Fed. Rep., 85; Assurance Soc. v. Nixon, 81 Fed. Rep., 796; New York Life Ins. Co. v. Ireland, 17 S. W. Rep., 617; Splawn v. Chew, 60 Texas, 534; Bank of Washington v. Hume, book 32 U. S. Sup. Ct., 370; Ricker v. Charter Oak Life Ins. Co., 38 Am. Rep., 290; Bliss on Life Ins., secs. 313, 317, 337, 339; May on Insurance, sec. 392.

BROWN, ASSOCIATE JUSTICE.—On the 21st day of November, 1898, the Washington Life Insurance Company issued and delivered to Louis Berwald a policy of insurance upon his life in the sum of $2000, payable to Rosa Berwald, his wife, conditioned upon the annual payment of $60.70 as premium thereon for twenty years, or until the death of the insured if it should occur before the expiration of twenty years. Among other provisions, the application for the policy, which was made a part of the contract, contained this provision: "That the policy now applied for shall be in the form in use by the company, and that the contract contained in such policy and in this application shall be construed according to the law of New York, the place of said contract being agreed to be the home office of the company." The statutes of the State of New York regulating insurance companies contain the following provision: "No life insurance company doing business in this State shall within one (1) year after default in the payment of any premium, installment or interest, declare forfeited or lapsed, any policy hereafter issued or renewed and not issued upon the payment of monthly or weekly premiums, or unless the same is a term insurance contract for one year or less, nor shall any such policy be forfeited or lapsed by reason of nonpayment when due of any premium, interest or installment, or any portion thereof required by the terms of the policy to be paid within one (1) year from the failure to pay such premium, interest, or installment, unless a written or printed notice, stating the amount of such premium, interest, or installment or portion thereof, due on such policy, the place where it shall be paid and the person to whom the same is payable, shall have been duly addressed and mailed to the person whose life is insured, or the assignee of the policy, if notice of the assignment has been given to the corporation, at his or her last known postoffice address in this State, postage paid by the corporation or by any officer thereof, or person appointed by it to collect such premium at least fifteen (15) and not more than forty-five (45) days prior to the day when the same is

97 Supreme—8.

payable. The notice shall also state, that unless such premium, interest or installment or portion thereof then due shall be paid to the corporation, or to the duly appointed agent or person authorized to collect such premium, by or before the day it falls due, the policy and all payments thereon will become forfeited and void, except as to the right to a surrender value or paid up policy as in this chapter provided. If the payment demanded by such notice shall be made within its time limited therefor, it shall be taken to be in full compliance with the requirements of the policy in respect to the time of such payment; and no such policy shall in any case be forfeited, or declared forfeited, or lapsed, until the expiration of thirty (30) days after the mailing of such notice. The affidavit of any clerk, officer or agent of the corporation, or of anyone authorized to mail such notice, that the notice required by this section has been duly addressed and mailed by the corporation issuing such policy shall be presumptive evidence that such notice has been duly given. No action shall be maintained to recover under a forfeited policy unless the same is instituted within one (1) year from the day upon which default was made in paying the premium, installment, interest or portion thereof, for which it is claimed that forfeiture issued." Louis Berwald paid the first premium when the policy was delivered, but he failed to pay the premium which fell due on the 21st day of November, 1899, about which time Reinhardt & Son, the State agents of the insurance company in Texas, called upon Berwald for the premium, and it was agreed between them that the time for the payment should be extended for thirty days. The policy contained the following provision: "No person, except the president, vice-president or secretary is authorized to make, alter or discharge a contract, or to waive forfeitures." This provision was at the bottom of the policy below the signatures of 'the officers of the company and was not embraced in the conditions and benefits as indorsed upon said policy.

At the end of the thirty days for which payment had been extended by Reinhardt & Son, Louis Berwald failed to pay the premium upon demand of him by the said Reinhardt & Son, and soon thereafter died without having paid it. The notice required by the statute of New York was mailed to the address of Louis Berwald at Dallas according to the requirements of that law, but there was no notice mailed to the said Berwald as required by the statute concerning the payment which fell due at the end of the thirty days.

After the second premium fell due, Louis Berwald was negotiating with the Pacific Mutual Life Insurance Company for a policy on his life for the sum of $2000, payable to Rosa Berwald, his wife. There was evidence sufficient to establish the fact that Louis Berwald intended to abandon the policy issued to him by the plaintiff in error, and Harry Cerf, the agent of the Pacific Mutual Life Insurance Company, testified that Louis Berwald told him that he gave up the policy here sued upon. The Pacific Mutual Life Insurance Company issued to Louis Berwald a policy for $2000, payable to Rosa Berwald, which was in force at the

death of Louis Berwald, and that policy was collected by the defendants in error. There is no evidence to show that Rosa Berwald knew that her husband intended to or attempted to surrender the policy sued upon when he took the policy from the Pacific Mutual.

There are no questions made upon the pleadings in this case, and it is unnecessary to set them out except that the defendant in error claims that the answer of the insurance company, which attempted to set up a surrender of the policy, is not sufficient to admit the evidence upon that subject. There is a conflict of evidence upon the fact, as claimed by the defendant in error, that the time for the payment had been extended by Reinhardt & Son, also upon the authority of Reinhardt & Son to make the extension of the payment; but the Court of Civil Appeals found upon both questions in favor of the defendant in error. The defendant in error also controverted the claim of the plaintiff in error, that Louis Berwald intended to or he attempted to surrender and abandon this policy, and denies that he had the power and authority to do so. There was a trial before a jury, which resulted in a verdict for the plaintiff for the amount of the policy, for damages, attorney's fees and interest, which was affirmed by the Court of Civil Appeals.

We find no error in the record of this case which requires a reversal of the judgment, and it will therefore be affirmed.

Plaintiff in error presented to the Court of Civil Appeals the following assignment of error: "The court erred in refusing defendant's requested charge number 3, which reads as follows: 'If from the evidence you find that Louis Berwald took out a policy in the Pacific Mutual and that he did so with the intention of abandoning the policy herein sued upon, and that he did so abandon the policy as herein sued upon, then you will return a verdict for the defendant.' " The assignment was not passed upon by the Court of Civil Appeals, because that court held that there was no evidence before the jury to justify the submission of the issue of abandonment of the policy. We do not pass upon that question, as in our judgment, admitting that the testimony made the issue of abandonment, the charge was properly refused because it does not embody a correct proposition of law.

When Louis Berwald effected the insurance upon his life in favor of his wife, her rights became vested so that Berwald and the insurance company could not terminate the contract without the consent of the wife, except in the manner provided by the policy, or the law. Splawn v. Chew, 60 Texas, 534; Irwin v. Traveler's Insurance Co., 16 Texas Civ. App., 683. In the last case cited, the subject of litigation was an accident policy, but we can see no distinction between that and an ordinary life policy so far as it affects this question. In that case the honorable Court of Civil Appeals of the Fifth District, in a well prepared opinion by Chief Justice Finley, followed the case of Splawn v. Chew, above cited, and upon application for writ of error, there being but one point presented, this court refused the application, which involved the approval of the opinion. Upon a careful examination of the question,

we find no reason to abandon our line of decision upon that question. It is well supported by the great weight of authority in this country. Glanz v. Gloeckler, 104 Ill., 573; Putnam v. New York Life Insurance Co., 7 So. Rep. (La.), 602; Packard v. Connecticut Mutual Life Insurance Co., 9 Mo. App., 469; Gosling v. Caldwell, 1 Lea (Tenn.), 454; Harley v. Heist, 86 Ind., 196; Griffith v. New York Life Insurance Co., 101 Cal., 627; Whitehead v. New York Life Insurance Co., 102 N. Y., 143; Stokell v. Kimball, 59 N. H., 13; Weisert v. Muehl, 81 Ky., 336; Connecticut Mutual Life Insurance Co. v. Baldwin, 15 R. I., 106; Ricker v. Charter Oak Life Insurance Co., 27 Minn., 193; Hooker v. Sugg, 102 N. C., 115; Central Bank v. Hume, 128 U. S., 195. The States of Massachusetts, Connecticut, New York, Missouri and New Hampshire each have statutes upon the subject of insurance in favor of the wife and children, which may have controlled the decisions of those States, and they are not regarded as authority in support of the proposition we have announced.

The wife has an insurable interest in her husband's life, which she may insure, taking a policy payable to herself or to her children, therefore it can not be said that the insurance procured by the husband for the wife is a mere gratuity; it is to protect an existing interest, as well as the performance of a duty to the wife. It is a contract about a matter of interest to the wife and she can pay the premiums herself in case her husband fails to do so, thereby protecting and preserving her right. Whitehead v. New York Life Insurance Co., before cited. If she has such interest in the contract that she might protect it against the wishes of her husband and the insurance company by making payments according to the terms of the contract, she is not a stranger to it, and surely her interest is of a character that she can not be deprived of it without her consent, except by her failure to see that the terms of the contract are complied with.

The contention of the plaintiff in error upon this question is supported by the following authorities: Clark v. Durand, 12 Wis., 223; Foster v. Gile, 50 Wis., 603; Estate of Breitung, 78 Wis., 33; Bickerton v. Jacques, 28 Hun, 119.

The opinion in the case of Clark v. Durand, before cited, was prepared by Chief Justice Dickson of the Supreme Court of Wisconsin, and is a very strong argument in support of his view of the question. He bases the decision upon the ground that the beneficiary in a life policy is not a party to the contract of insurance and that there is no legal obligation resting upon the insured to maintain the contract in favor of the beneficiary, from which he draws the conclusion, that until the death of the insured the contract is under his control and that he may, with the consent of the insurance company, change it so as to substitute another beneficiary, or he may surrender it entirely. This was qualified in Foster v. Gile, 50 Wis., 607, in which the court said that the doctrine of Clark v. Durand was an extreme view of the law, and announced its conclusions thus: "Notwithstanding what was said in Clark v. Durand,

we think the taking of the policy by the insured, payable to another, is so far in the nature of an executed voluntary settlement that it vests in the person to whom the insurance money is made payable an actual subsisting interest in the policy, but not the absolute, unconditional ownership of it and of the moneys therein agreed to be paid. The interest of the beneficiary is subject to the right of the insured, who has paid the premiums, to revoke the same and retain it himself or vest it elsewhere." In the Estate of Breitung, before cited, Casseday, justice, filed a vigorous and strong dissenting opinion in which he reviewed the authorities and challenged the correctness of the line of decisions in that State upon this question. The majority of the court said: "Now it is said that this doctrine is opposed to the great weight of authority, and we are urged to change our decision on the subject so as to bring it in harmony with the decisions elsewhere. In answer to this suggestion, we observe that we are bound to adhere to the rule which has been so long established in this State. If that rule is found not to be salutary or wise it is within the power of the Legislature to change it, and it is much better that the change come that way than that this court depart from the rule which has so long been acted upon as settled." From this language it would seem that the majority were almost persuaded to give up their position, but felt themselves bound by the rule of stare decisis to adhere to the line of decisions theretofore established.

Undoubtedly there are strong reasons why the rule as it has been settled in the State of Wisconsin should prevail, yet upon the whole we believe that the stronger reason is in favor of that which has been adopted by the majority of the courts. One of the objections to holding that the policy vests an interest in the beneficiary is that it deprives the insured of the privilege of changing the provision so as to meet the changed conditions of his family; but this objection is well answered by the Supreme Court of Indiana in Harley v. Heist, before cited, in this manner: "It is said further, that to deny to the husband, who has paid the premium, the right to dispose of the policy to his own use, after the death of the wife, imposes upon him a hardship and wrong. A sufficient answer to this is, that if he wishes to retain to himself the control and ownership of the policy in such case, he may so provide in the policy."                                   *Affirmed.*