## ROBERTS *v.* NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY; *et vice versa.*

1. The right reserved by an insured in a policy of life insurance to change the beneficiary does not include the power to surrender and cancel the policy without the consent of the beneficiary.
2. Nor is any power by the insured to surrender the policy to the insurer during the first year of its existence, without the beneficiary's consent, to be derived from the policy options with reference to loans and acceptance of surrender values after three full years' premiums have been paid.
3. A cross-bill of exceptions must be tendered to the trial judge within thirty days from the date of the service of the principal bill of exceptions.

AUGUST 10, 1915.

Action upon insurance policy. Before Judge Worrill. Early superior court. April 10, 1914.

James B. Roberts applied for a policy of insurance upon his life in the Northwestern National Life Insurance Company. In his application he directed that the policy be made payable to his wife, Laura Roberts, reserving the right to change the beneficiary. On November 9, 1909, the insurance company issued and delivered the insurance policy to the insured, who, upon its receipt, executed and delivered to the insurance company his promissory note which was accepted for the first year's premium. The policy contained the following provisions: "[5] The insured, subject to any existing

assignment of the policy, may designate a new beneficiary, with or without reserving right of revocation, by filing written notice thereof at the home office of the company accompanied by the policy for suitable endorsement thereon, provided in making application for this policy the right of revocation has been reserved. If any beneficiary, under either a revocable or irrevocable designation, shall die before the insured, and the insured shall not have designated a new beneficiary, the interest of such beneficiary shall revert to the insured, the insured's legal representatives or assigns. . . [11] No assignment of this policy shall be binding upon the company unless filed at the home office of the company. The company assumes no responsibility for the validity of any assignment. . . [12] After three full years' premiums have been paid, and while this policy is in force, the company will advance, on proper assignment of this policy, a sum not greater than the loan value stated in the table of loans on the third page hereof," etc. "[13] If, after three full years' premiums have been paid, any subsequent premium be not paid, the insured may, within one month after the unpaid premium shall have become due, select one of the methods of surrender settlement shown in the table of loan and surrender values, on the third page hereof, namely: (A) To accept the value of this policy in cash; or (B) To have the insurance continued in force from the date of default, without the right to loans, for its face amount, less any indebtedness to the company hereon; or (C) To purchase paid-up insurance, payable at the same time and on the same conditions as this policy." On July 29, 1910, the insured, in Early county, surrendered the policy of insurance to an agent of the insurance company for cancellation, and the agent of the company contemporaneously surrendered his note for the premium, and the policy was marked canceled by the company. The insured died on September 3, 1910. The company waived the furnishing of proofs of death of the insured, and made an absolute refusal to pay anything on the policy to the beneficiary named therein. Thereupon the wife of the insured brought an action on the policy. She died pending the suit, and her administrator was made a party in her stead. The company denied liability; and the foregoing facts were submitted to the judge under a stipulation that he should pass upon the case without the intervention of a jury. A judgment was rendered in favor of the defendant, and the

plaintiff brings error. The defendant filed a cross-bill of exceptions.

*R. H. Sheffield* and *Pope & Bennet,* for plaintiff.

*Pottle & Hofmayer, Rambo & Wright,* and *C. L. Glessner,* for defendant.

EVANS, P. J. (After stating the foregoing facts.)

1, 2. It appears from the stipulation of the parties that the liability of the insurance company depends upon the right of the insured to surrender the policy and agree upon its cancellation, without the consent of the beneficiary named in the policy. The subject-matter of the action is an ordinary policy of life insurance. It is well established in this State, and in other jurisdictions, that "in ordinary life insurance, where no power of divestiture or to change the beneficiary is reserved in the policy, the issuance of the policy confers a vested right upon the person so named as beneficiary, and the insured can not transfer such interest to any other person without the consent of such beneficiary." *Perry* v. *Tweedy,* 128 *Ga.* 402 (57 S. E. 782, 119 Am. St. R. 393, 11 Ann. Cas. 46) ; *Arnold* v. *Empire &c. Life Insurance Co.,* 3 *Ga. App.* 685 (60 S. E. 470) ; Central Bank of Washington *v.* Hume, 128 U. S. 195 (9 Sup. Ct. 41, 32 L. ed. 370) ; Fergerson *v.* Phoenix Mutual Life Insurance Co., 84 Vt. 350 (79 Atl. 997, 35 L. R. A. (N. S.) 844) ; Washington Life Insurance Co. *v.* Berwald, 97 Tex. 111 (76 S. W. 442, 1 Ann. Cas. 682) ; 3 Cooley's Briefs on Insurance, 2863. The principle upon which this doctrine rests is that the person procuring the insurance divests himself of all interest in the policy, and the policy vests exclusively in the beneficiary, so as to make an irrevocable settlement upon the beneficiary for the amount for which the policy is issued. Any right to change the beneficiary is one of contract, and it can be accomplished only in the manner pointed out in the policy. There was no attempt by the insurer and the insured, in the instant case, to change or substitute a different beneficiary. The insured reserved that right in his policy, but did not act upon it. The insured and insurer attempted to surrender and cancel the policy, contending that as the insured reserved the right to change the beneficiary, he had the right to agree with the insurer upon the cancellation and surrender of the policy. The right to change the beneficiary in an ordinary life-insurance policy does not include the power to surrender and can-

cel without the consent of the beneficiary. The right to change the beneficiary is quite different from the right to surrender the policy for the purpose of cancellation; as the former contemplates modification and continued existence of the policy, while the latter contemplates its complete destruction. Holder *v.* Prudential Insurance Co., 77 S. C. 299 (57 S. E. 853). Neither will the right to surrender the policy be inferred from the provision allowing assignments of the policy to secure loans on its security; for the reason that such right did not arise until after three full years' premiums had been paid. For the same reason the power of cancellation does not result from the stipulation providing for a settlement of the value of the policy in cash after three full years' premiums have been paid. In the 5th paragraph of the policy, providing for a change of beneficiaries, it is expressly recognized that the beneficiary has a vested interest in the policy, subject to divestiture by change of beneficiary, from the provision that if the beneficiary should die before the insured, and the insured should not have designated a new beneficiary, the interest of the original beneficiary shall revert to the insured, his legal representatives or assigns. If the beneficiary had no vested interest, then there was nothing to revert, under the contingency named in this paragraph. We are therefore of the opinion that the interest of one named as beneficiary in an ordinary life-insurance policy is a vested interest, and the contract of insurance can not be terminated by the insured and insurer without the consent of the beneficiary, except in the manner provided by the policy. The policy did not provide for its surrender and cancellation by agreement between the insured and insurer; and the plaintiff is entitled to recover thereon under the stipulated facts.

3. A motion was made to dismiss the cross-bill of exceptions, because it was certified more than thirty days after the main bill of exceptions was signed and served. The statute is silent as to the time when cross-bills of exceptions shall be tendered to the trial judge for certificate; and the point presented must be decided from a consideration of the various statutory provisions relating to the practice prescribed for reviewing judgments of the trial court by the Supreme Court. The Civil Code (1910), § 6139, provides that the main bill of exceptions shall specify plainly the decision complained of and the alleged error, and shall be signed by the party or

his attorney. "And when the successful party to any cause tried in any of the superior or city courts of this State, which is carried to the Supreme Court by the unsuccessful litigant, files a cross-bill of exceptions, complaining of errors in rulings made upon the trial, adverse to him, it shall be the duty of the Supreme Court to hear argument upon such cross-bill of exceptions and to decide the questions therein made, if a reversal of the judgment of the court below is ordered, or if the effect of the affirmance is to leave the case to be again tried in the court below." The act of 1889 (Civil Code (1910), § 6140 et seq.) provides for the manner of taking cases to the Supreme Court, and declares (§ 6148) : "If a defendant in error excepts in any case by bill of exceptions, he shall prepare his bill of exceptions and proceed in the same manner as above provided, but shall not take up any portion of the evidence or record that is taken up by the main bill of exceptions." The practice with reference to the particularity of assignments of error, as well as to the subject-matter of exceptions in main and cross-bills of exceptions, has always been considered substantially the same. The essential difference between a main and a cross-bill of exceptions is that the latter does not lie until a main bill has been certified, and it is sued out by the defendant in error. The practice act does not indicate that the plaintiff in error in a cross-bill of exceptions is to be accorded any privilege superior to the plaintiff in a main bill. The Civil Code, § 6152, requires that a main bill of exceptions in ordinary cases shall be tendered to the trial judge within thirty days from the adjournment of the court or the date of the decision in chambers; and in the event that the court shall not adjourn within thirty days from the date of the opening of the court, then such bill of exceptions shall be tendered to the trial judge within sixty days from the date of the decision, judgment, verdict, or decree rendered. By the Civil Code, § 6153, "fast bills of exceptions" must be tendered within twenty days of the judgment complained of. It would seem, as a limit of time for tendering a main bill of exceptions is fixed by statute, that the statute implied a like limitation upon cross-bills. The statute (Civil Code, § 6158) provides that if the judge shall determine that a bill of exceptions is not true, he shall return the same within ten days to the party or his attorney, with his objections to the same in writing. If these objections are met and removed, the judge may then

certify the bill of exceptions. It has been held that the silence of the code with respect to the time when the corrected bill of exceptions shall be tendered to the judge can not be construed as giving the party an indefinite time, but that the statute should be construed to mean that the plaintiff is to have such length of time as is allowed for the original bill of exceptions. *Atkins* v. *Winter,* 121 *Ga.* 75 (48 S. E. 717); *Meador* v. *Callicott,* 129 *Ga.* 631 (60 S. E. 863). A similar point was before the court in *Harris* v. *Central R.,* 78 *Ga.* 525 (3 S. E. 355). In that case a motion to dismiss the cross-bill, on the ground that it was sued out too late, was denied. In the opinion Bleckley, C. J., said that "there was no right to a cross-bill until the principal bill had been signed, and that, as the cross-bill was of the same date, or near the same date, as the principal bill, it was in time." The implication is clear that the decision was rested on the ground that there was no laches, because the cross-bill was certified substantially about the time that the principal bill was signed; and the implication is further that the court recognized that the plaintiff in the cross-bill was not entitled to an indefinite time within which to tender his cross-bill. Therefore, taking into consideration the entire statutory procedure relating to bringing cases to this court for review, we hold that a cross-bill of exceptions must be tendered to the trial judge within thirty days from the date of the service of the principal or main bill of. exceptions. More than thirty days having intervened between the service of the main bill and the tender and certificate of the cross-bill, the motion must prevail.

*Judgment reversed on the main bill of exceptions. Cross-bill of exceptions dismissed. All the Justices concur.*