Francisca MAISONET PEREZ, Plaintiff,

v.

METROPOLITAN LIFE INSURANCE
CO., Defendant.

Civ. 92–2065.

United States District Court,
Puerto Rico.

March 29, 1993.

A.J. Amadeo–Murga, San Juan, PR, for plaintiff.

María Soledad Ramírez–Becerra, Mercado & Soto, San Juan, PR, defendant.

### OPINION AND ORDER

FUSTE, District Judge.

Plaintiff complains that defendant insurance company wrongfully awarded the proceeds of her deceased son's $500,000 term life insurance policy to the previous sole beneficiary, her son's ex-wife. Plaintiff alleges that the insured had amended the policy before his death to award 40% of the policy to plaintiff and the remaining 60% in equal portions to decedent's three children. Defendant contends that decedent never·completed the endorsement process to substitute his mother and children as beneficiaries, and

argues that the company's awarding of the proceeds of the policy to decedent's ex-wife followed the precise letter of the policy and the law.

Plaintiff first sought a remedy through the Puerto Rico Insurance Commissioner ("Commissioner") but, in the end, the Commissioner would only provide an advisory opinion that plaintiff should receive $200,000 from defendant. Plaintiff brings this action in federal district court, demanding a judgment of $200,000 to which she is allegedly entitled under the amended life insurance policy. Plaintiff also seeks other damages relating to the alleged misdirection of the policy's proceeds; however, the pending motion before the court is plaintiff's prayer for partial summary judgment as to the $200,000 from the policy. Federal jurisdiction is based on diversity of citizenship between plaintiff and the deceased assured. 28 U.S.C.A. § 1332(c)(1). We deny plaintiff's motion because there exist genuine issues of material fact in dispute.

### I.

### Facts

Walter· M. Traverso ("Traverso") purchased and was issued a $500,000 term life insurance policy from Defendant Metropolitan Life Insurance Company ("Metropolitan"), a Rhode Island-based corporation, on November 4, 1988. Traverso, a citizen of Puerto Rico, named his then wife, María M. Castro Jurado ("Castro–Jurado"), as the sole beneficiary. Following the divorce of Traverso and Castro–Jurado, Traverso went to his insurance agent, a representative of Metropolitan, and expressed his intention to amend the beneficiary section of his policy and requested the appropriate form for such a change. Traverso wanted to substitute his mother, plaintiff Francisca Maisonet Pérez, a domiciliary of Virginia, and Traverso's children, Antuam, Tamara, and Ittai Francisco Traverso–Castro, for his ex-wife, Castro–Jurado. Traverso completed the proper form for a change of beneficiary and forwarded it to Metropolitan. Metropolitan received the change of beneficiary form at its head office in August 1989, but did not affect the changes to the policy. Metropolitan claims

to have sent two letters to Traverso, on August 25, 1989, and October 16, 1989, advising him that for the change of beneficiaries to be validated, he would have to submit the insurance policy for endorsement.

Traverso's life insurance policy gives the insured or owner the following authority:

> As owner, you may exercise all rights under your policy while the insured is alive.... The beneficiary is the person or persons to whom the insurance proceeds are payable when the insured dies. You may name a contingent beneficiary to become the beneficiary if all the beneficiaries die while the insured is alive.... You may change the owner, contingent owner, beneficiary or contingent beneficiary of this policy by written notice or assignment of the policy. No change of policy is binding on us until it is recorded at our Home or a Head Office. Once recorded, the change binds us as of the date you signed it. The change will not apply to any payment made by us before we recorded your request. *We may require that you send us this policy to make the change.*

*Opposition to Motion for Partial Summary Judgement,* Exhibit VII (emphasis added). Metropolitan avers that it sent a third letter on December 13, 1989, informing Traverso that his failure to remit the policy for endorsement of the changes prevented the insurance company from continuing with the procedures required to make the requested change of beneficiaries. Metropolitan apparently sent its letters with no return receipt to assure Traverso's acknowledgement of receiving the letters to Traverso's post office box in Puerto Rico. During the same period, Traverso allegedly became ill and went to the Continental United States for treatment and did not receive any of Metropolitan's letters. The letters were addressed to Traverso at a post office box in Toa Alta, Puerto Rico. It is unclear why Traverso did not receive the letters; plaintiff suggests that Castro–Jurado may have intercepted the letters, in order to protect her interest in the status quo, although no evidence exists in the record to support plaintiff's assertion.

Shortly thereafter, on January 7, 1990, Traverso died. A few months later, Metro-

politan paid the full amount of the policy to Castro–Jurado, the only beneficiary of the policy recognized by Metropolitan. There is no evidence about whether Metropolitan considered Traverso's intent in sending the change of beneficiary form or attempted to investigate Traverso's circumstances before giving the full monetary award to Castro–Jurado.

## II.

### *Procedural History*

Plaintiff filed a complaint with the Office of the Insurance Commissioner on May 13, 1991, seeking the $200,000 portion of the full policy to which she claims an entitlement. P.R.Ins.Code § 2.220(b) [26 L.P.R.A. § 222(1)(b)]. A hearing of unclear status was held on October 29, 1991, followed by a determination on January 30, 1992, that Metropolitan should pay plaintiff the sum of $200,000. The administrative decision also contained a determination of a series of facts.

The $200,000 was never paid to plaintiff. A rehearing on April 22, 1992, requested by Metropolitan, resulted in an agreement that no violation of the Puerto Rico Insurance Code had been committed; therefore, the examining officer informed the parties that the status of the hearing was only consultative. Metropolitan made a motion to invalidate the original determination for lack of jurisdiction, since the case involved only private actors, but we know of no decision yet made regarding Metropolitan's motion. However, on September 2, 1992, the Commissioner issued a "resolution" reaching the same conclusions as to plaintiff's claim, but which explicitly stated that the Commissioner's decision was not an adjudication. The Commissioner's resolution was deemed an "advisory opinion."

Plaintiff now brings her action to the federal district court, seeking, among other things, a partial summary judgment on the issue of whether Defendant Metropolitan should award plaintiff the equivalent of 40% of her son's term life insurance policy.

## III.

### Standard for Summary Judgment

■ Federal Rule of Civil Procedure 56(c) states that summary judgment "shall be rendered forthwith if the pleadings, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is *no genuine issue* as to any *material fact* and that the moving party is entitled to a *judgment as a matter of law.*" Fed.R.Civ.P. 56(c). Therefore, in deciding a summary judgment motion, there are essentially three inquiries to pursue: The materiality and genuineness of the factual dispute, and the entitlement to judgment as a matter of law. *Id.; Román Figueroa v. Torres Molina,* 754 F.Supp. 239, 240–41 (D.P.R.1990).

" '[G]enuine' means that the evidence is such that a reasonable jury could resolve the point in favor of the nonmoving party." *United States v. One Parcel of Real Property with Bldgs.,* 960 F.2d 200, 204 (1st Cir.1992) (citation omitted). A "material" fact describes one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■■ Summary judgment may be granted even if there is a factual dispute, so long as the fact at issue is *immaterial* to the legal disposition of the case. Moreover, summary judgment may be granted even if an alleged fact is material, as long as there is no *genuine* dispute about the fact. *U.S. Fire Ins. Co. v. Producciones Padosa, Inc.,* 835 F.2d 950, 953 (1st Cir.1987).

In all of the court's considerations in deciding a summary judgment motion, the court must consider the record in the light most favorable to the non-moving party. *Bank One Texas, N.A. v. A.J. Warehouse, Inc.,* 968 F.2d 94, 97 (1st Cir.1992).

## IV.

### Standard for an Effective Change of Beneficiary

Life insurance policies generally include a provision explaining the method to change beneficiaries. 5 George J. Couch, et al., *Couch Cyclopedia of Insurance* § 28:37 (2d ed. 1984); *see also* 2–2A John Alan Appleman, et al., *Insurance Law and Practice* §§ 901–1390 (2d ed. 1966). The majority of policies require a written notification of the change for it to become effective. Remittance of the policy for endorsement is also a common element of the beneficiary change provision. As a general proposition, if an insured person follows the precise letter of the policy in changing beneficiaries, insurance companies must effectuate the requested change. However, when an insured falls short of complying with the letter of the policy, insurance companies may or may not institute the insured's intended change. Litigation often stems from such situations. The difficult case before us is one arising from such a policy interpretation dispute. There are several schools of thought with regard to policy interpretation: strict compliance, subjective compliance, and substantial compliance.

### A. Strict Compliance

■ Strict compliance with the letter of the policy in changing beneficiaries is usual in policies where the consent of the insurer is required. *See* 5 George J. Couch, et al., *Couch Cyclopedia of Insurance* § 28:53 (2d ed. 1984). However, some jurisdictions have found that even in cases where a change of beneficiary does not require the consent of the insurer but only certain acts on the part of the insured, the precise requirements stated in the policy must be followed. In essence, "[t]he right to change the beneficiary is one of contract, and it can be accomplished only in the manner specified in the policy." *Hagins v. Fuller,* 138 Ga.App. 23, 24, 225 S.E.2d 485 (1976) (citing *Roberts v. Northwestern Nat. Life Ins. Co.,* 143 Ga. 780, 782, 85 S.E. 1043 (1915)). *See also* 5 George J. Couch, et al., *Couch Cyclopedia of Insurance* § 28:68 (2d ed. 1984). This view of the law reflects a concern for insurers who benefit from having a bright line to determine when a change is valid so that policy proceeds can be distributed without fear of legal challenge. *See Pan American Life Ins. Co. v. De Cobi-*

*án Alvarez,* 160 F.Supp. 292, 294 (D.P.R. 1958); *but see Prudential Ins. Co. v. King,* 324 F.Supp. 1236, 1251 (W.D.Mo.1970), *rev'd,* 453 F.2d 925 (8th Cir.1971). Moreover, contract law theory supports the notion that a written insurance policy is like any bargain and cannot be brushed aside by a well-intentioned court.

### B. Subjective Compliance

On the other end of the legal spectrum, a few state courts have upheld beneficiary changes when the insured subjectively believed that his or her actions had complied with the policy requirements. *See, e.g.; Marshall v. Marshall,* 399 S.W.2d 487 (Ky.1966).

### C. Substantial Compliance

■ The most frequently applied standard for evaluating the effectiveness of a change of beneficiary is "substantial compliance." *See* 5 George J. Couch, et al., *Couch Cyclopedia of Insurance* § 28:66 (2d ed. 1984).

By the great weight of authority, a change of beneficiary under a policy containing the usual change-of-beneficiary clause relating to notice and indorsement can be accomplished without strict or complete compliance therewith on the theory that substantial compliance by the insured with the conditions respecting a change of beneficiary is sufficient. This conclusion is predicated upon the view that the indorsement by the insurer is merely an administrative act which it cannot refuse to perform. That is, if the consent of the insurer is not required, so that indorsement of change is a mere ministerial act, its neglect to make such indorsement is not available to the original beneficiary to nullify the designation of a new beneficiary. The majority is also supported by the consideration that it is unlikely that the parties to the contract should have intended that each step in the procedure must be literally complied with to effect a change of beneficiary, and it seems much more reasonable to assume that what they had in mind was a compliance sufficient to give assurance of the authenticity of the insured's desire to bring

about a change and to provide trustworthy evidence of that desire to the insurer.

5 George J. Couch, et al., *Couch Cyclopedia of Insurance* § 28:72 (2d ed. 1984) (citations omitted); *see also* 2 John Alan Appleman, et al., *Insurance Law and Practice* § 981 (2d ed. 1966); 7 Samuel Williston, *A Treatise of the Law of Contracts* § 916 (3d ed. 1963).

[W]hen an insured wishes to change the beneficiary, he can do so without strict and literal compliance with the policy terms. Thus, it is *not always necessary* that the form supplied by the company be used *or that the change be endorsed on the policy.* Substantial compliance with policy provisions is sufficient. All that is required is that every reasonable effort under the circumstances be made to effect the change.

*Provident Mut. Life Ins. Co. of Philadelphia v. Ehrlich,* 508 F.2d 129, 132–33 (3rd Cir. 1975) (applying Pennsylvania law) (emphasis added). In determining whether an insured has substantially complied with the policy so as to affect a change of beneficiaries, courts look for facts that demonstrate the insured's intent to change beneficiaries and that the insured made reasonable efforts under her or his particular circumstances to comply fully with the relevant provision of the policy.

### D. Compliance Standard in Puerto Rico

■ Puerto Rico has not officially adopted a particular standard for insurance cases involving change of beneficiaries. However, we can infer that Puerto Rico has de facto adopted a substantial compliance standard. First, the Puerto Rico Insurance Commissioner issued an advisory opinion that plaintiff should recover from Metropolitan the insured's intended $200,000 award, despite the fact that the insured *did not strictly comply* with the policy provision. Second, Puerto Rico case law advances a general rule of liberal policy interpretation in favor of the insured over the insurer. *See Barreras v. Santana,* 87 P.R.R. 215 (1963); *Quiñones v. Tropical Beverages,* 74 P.R.R. 338 (1953). Puerto Rico law relating to the assignment of insurance policies also favors an insured's ability to affect a change by submitting a written notice to an insurer's "home office." [1]

1.   [A]ny policy issued by a life or disability insur-    er under the terms of which the beneficiary

P.R.Ins.Code § 11.280 [26 L.P.R.A. § 1128]. Third, case law throughout the majority of the country favors a substantial compliance standard in determining the effectiveness of beneficiary changes. *See, e.g., Cook v. Cook,* 17 Cal.2d 639, 111 P.2d 322 (1941); *Hoffman v. Federal Reserve Life Ins. Co.,* 123 Kan. 554, 255 P. 980 (1927); *Gayden v. Kirk,* 207 Miss. 861, 43 So.2d 568 (1949); *Strianese v. Metropolitan Life Ins. Co.,* 221 A.D. 81, 223 N.Y.S. 16 (1927); *Tips v. Security Life & Acci. Co.,* 144 Tex. 461, 191 S.W.2d 470 (1945); *cf. Pan American Life Insurance Company v. De Cobián Alvarez,* 160 F.Supp. 292 (D.P.R.1958) (implying a contract-based view of policy compliance); *see also,* 5 George J. Couch, et al., *Couch Cyclopedia of Insurance* § 28:72 n. 18 (2d ed. 1984); *see generally* Mark Davis, *Note, Life Insurance Beneficiaries and Divorce,* 65 Tex.L.Rev. 635 (1987); Alan S. Wilmit, *Note, Applying the Doctrine of Revocation by Divorce to Life Insurance Policies,* 73 Cornell L.Rev. 653, 672–73 (1988).

### E. Two–Part Test for Substantial Compliance

In most jurisdictions which recognize beneficiary changes through substantial compliance with policy provisions, a two-part test is applied.[2] "[T]he evidence [must show], first, that the insured had definitely intended to change the beneficiary and, second, that he did everything possible under the circumstances to effect that change." *Pipe Fitters' Local No. 392 Pension Plan v. Huddle,* 549 F.Supp. 359, 361 (S.D.Ohio 1982). *See also Metropolitan Life Insurance Company v. Barnes,* 770 F.Supp. 1393, 1397 (E.D.Mo. 1991); *Tomaneng v. Reeves,* 180 F.2d 208, 209 (6th Cir.1950).

may be changed upon the sole request of the insured, may be assigned either by pledge or transfer of title, by an assignment executed by the insured alone and delivered to the assignee, whether or not the pledgee or assignee is the insurer. Any such assignment shall entitle the insurer to deal with the assignee as the owner or pledgee of the policy in accordance with the terms of the assignment, until the insurer has received at its home office written notice of termination of the assignment or pledge.

### V.

### Application of Substantial Compliance Test to Facts on Summary Judgment Standard

One of the complications of disposing of this motion is that we are faced with the interaction of two layers of legal standards: substantial compliance within a summary judgment context. In order to prevail at this stage of the litigation, plaintiff must prove that no genuine issue of material fact is in dispute, and that plaintiff is entitled to judgment as a matter of law. Therefore, not only does plaintiff have to prove that the important facts are not in dispute, but also that they support the legal conclusion that Traverso substantially complied with the beneficiary change provision in amending the policy—all when viewing the record in the light most hospitable to Metropolitan. *Mesnick v. General Electric Co.,* 950 F.2d 816, 822 (1st Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992).

### A. Intent

■ We think it is clear that insured Traverso sufficiently demonstrated his intent to change the beneficiary clause of his life insurance policy. He inquired as to the proper change of beneficiary form, and then obtained, completed, and signed the form. He also forwarded the signed change to the main office of Metropolitan. Traverso's intent seems clear given his filing of the change of beneficiary form. We can also discern that Metropolitan understood Traverso's initial expression of intent, since Metropolitan responded with confirmation letters sent to the post office box in Toa Alta. Further, it is not uncommon, following a divorce, for a spouse to remove an ex-spouse as the beneficiary of

Ins.Code § 11.280 [26 L.P.R.A. § 1128].

**2.** It will be noticed that the earlier cases tend to a more strict compliance with the method prescribed in the policy, while the recent cases take a more liberal view by endeavoring to give effect to the intention of the insured, if this intention has been clearly expressed and if the holder of the policy has made every reasonable effort to effect a change.
5 George J. Couch, et al., *Couch Cyclopedia of Insurance Law* § 28:74 (2d ed. 1984).

a life insurance policy. *See* Mark Davis, *Note, Life Insurance Beneficiaries and Divorce*, 65 Tex.L.Rev. 635 (1987); Alan S. Wilmit, *Note, Applying the Doctrine of Revocation by Divorce to Life Insurance Policies*, 73 Cornell L.Rev. 653, 672–73 (1988). Metropolitan never disputes Traverso's intent other than to draw inferences from Traverso's lack of response to Metropolitan's letters. We do not find Metropolitan's inferences to be sufficient to disbelieve Traverso's intent even when viewed in the light most favorable to Metropolitan. The facts·in the record support a legal conclusion that Traverso intended to change the beneficiaries of his policy, and thereby, the facts satisfy the first prong of the substantial compliance test. We now must turn to the more difficult inquiry: Insured's actions to comply with policy provisions.

### B. *The Second Prong of Substantial Compliance*

#### 1. *Insured's Efforts*

▪ Traverso intended to change his policy. But did he perform all reasonable actions to conform to the insurance policy's method of embodying his intentions? This question may only be answered within the confines of the facts as presented in the record. The circumstances in which to apply the equitable doctrine of substantial compliance are "a matter dependent upon the particular facts of each case, none ever quite a clone of any other." *Pittman v. Pittman,* 419 So.2d 1376, 1379 (Ala.1982). In the context of a summary judgment motion, it would be improper for this court to speculate about the contents of material gaps in the factual record. *See* Fed.R.Civ.P. 56. We must make all reasonable inferences in favor of the non-moving defendant, Metropolitan. *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990). Examining plaintiff's claim with the rigors of summary judgment analysis, we are unable to grant the motion. This court is blocked from taking the bold action of granting summary judgment and dispensing with a trial on the merits because material facts remain either hidden or disputed.

The facts show that Traverso did go to his insurance agent to obtain the proper insurance form. He completed the form, signed it, and forwarded it to the insurance company. Certainly, by acquiring the form and sending it to the insurance company, Traverso took a large if not substantial step toward reasonable compliance with the policy's provision on change of beneficiaries. However, did Traverso know that a secondary requirement might be remittance of the policy itself for endorsement? Furthermore, what did the insurance agent tell Traverso upon providing the form in regard to remitting the actual policy? No details of the meeting are present in the record, but they are important in understanding Traverso's subsequent actions.

Perhaps most importantly, we know *little* about Traverso's treatment and condition in the months before his death. Traverso went to the Continental United States for medical treatment, and apparently remained outside of Puerto Rico until he died. We do not know ·the facts surrounding Traverso's time in the States, such as the date he left Puerto Rico. Without knowing the date of his departure, we cannot be certain whether Traverso was in a position to have received the letters sent to the post office box by Metropolitan. Moreover, the record conflicts as to the possession of the post office box where Metropolitan's letters were sent. Was the box shared between Traverso and his ·ex-wife? Was the box Traverso's, but his ex-wife, Castro–Jurado, had a key? Was the box only kept by Castro–Jurado? Did Traverso make any arrangements for the receipt of his mail when he left Puerto Rico? · Did Metropolitan send the letters certified or registered mail so as to have proof of their receipt by Traverso?

We also have no factual information that would allow us to conclude that Traverso was unable to manage his financial and other affairs while ill in the States. The fact that he died as a result of his illness does suggest that Traverso may have been significantly incapacitated and unable to further comply with the provision required to change the beneficiaries in his final months. Were such the case, Traverso may indeed have substantially complied with the policy. With a barren record, however, we are unwilling to

assume for the sake of a summary judgment motion that Traverso was so incapacitated that he could not be responsible for his affairs in Puerto Rico.

### 2. *Additional Unanswered Questions*

Other unanswered questions remain that may be relevant to a determination of Traverso's compliance with the insurance policy, or important to the disposition of the motion. For example, is there any evidence that Metropolitan knew that Traverso was ill in the States? At the time of Traverso's death, did Metropolitan make a determination that the deceased's change of beneficiary form was inconsequential? Did Metropolitan keep a copy of Traverso's change of beneficiary form on file? Why did Metropolitan not interplead if there was a doubt as to the legal beneficiaries of the policy? Did plaintiff put Metropolitan on notice that she would contest the awarding of the policy to Castro–Jurado? If plaintiff did not notify Metropolitan before the proceeds were distributed to Castro–Jurado, did plaintiff even know of Metropolitan's intention to award Castro–Jurado the full amount of the policy?

## VI.

### *Conclusion*

It is impossible for the court to decipher the record's code as to Traverso's legal level of compliance with the insurance policy's provisions. The record is simply riddled with factual holes that are relevant to the legal outcome of the case. At this stage in the development of the record, it seems inevitable that a trial with a more complete presentation of evidence will be necessary to decide this case. Given that a grant of partial summary judgment would be imprudent at this juncture, we must DENY plaintiff's Rule 56 motion.

**IT IS SO ORDERED.**